UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

KIRBY AISNER & CURLEY LLP
Rosemarie E. Matera, Esq. (RMatera@kacllp.com)
Julie Cvek Curley, Esq. (JCurley@kacllp.com)
*Admitted Pro Hac Vice*
700 Post Road, Suite 237
Scarsdale, New York 10583
Telephone: (914) 401-9500

*Attorneys for Exit 14 Associates, L.P.*

| | |
|---|---|
| In Re:<br><br>JFM. 6090, LLC., d/b/a BURGER KING, et al.,[1]<br><br>Debtors. | Case No.: 26-15123 (Jt Admin)<br><br>Hearing Date: July 14, 2026<br><br>Chapter: 11<br><br>Judge: John K. Sherwood |

**LANDLORD'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I)(A) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION PROCEDURES, (C) APPROVING THE FORM OF BALLOT AND NOTICES IN CONNECTION THEREWITH, (D) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (E) GRANTING RELATED RELIEF**

Exit 14 Associates, L.P. (the "Landlord"), by its undersigned counsel, hereby files this objection (the "Objection") to the motion (the "Motion") [ECF No. 56] of JFM 6090, LLC, JFM Sparta, LLC, JFM Spring, LLC, (collectively, the "Debtors") for entry of an order: (i) approving the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan Proposed by the Debtors-In-Possession* dated June 25, 2026 (the "Disclosure Statement") [ECF No. 54] on an interim basis; (ii) scheduling a combined hearing to consider (a) approval of the Disclosure Statement on a final basis, and (b) confirmation of the *Plan of Reorganization* dated

[1] The Debtors in these Chapter 11 cases, along with their case numbers are as follows: J.F.M. 6090, Inc., Case No. 26-15123 (JKS); JFM Spring LLC, Case No. 26-15124 (JKS); and JFM Sparta, LLC, Case No. 26-15275(JKS).

June 25, 2026 (the "Plan") [ECF No. 55]; (iii) fixing the dates and deadlines related to the solicitation and confirmation of the Plan; (iv) approving the solicitation, notice and tabulation procedures related to solicitation of the Plan, and (v) granting related relief. In support of this Objection, the Landlord respectfully represents as follows:

## PRELIMINARY STATEMENT[2]

1. The Disclosure Statement does not contain adequate disclosures regarding (i) the Debtors' operations during its Chapter 11 Cases and profitability as a non-Burger King® franchised enterprise; (ii) the source of funding to deidentify as a Burger King® restaurant; (iii) Debtors' financial projections; (iii) erroneous information regarding the cure amounts due to Landlord; (iv) omission of adequate assurance of future performance to Landlord in connection with the assumption of the Spring Valley Lease; (v) estimated amounts of administrative claims; (vi) estimated amount of priority tax claims; (vii) estimated monthly payments to Class 1 and 2 secured creditors under the Plan; (viii) liquidation analysis; and (ix) the "new value" to be contributed by Ranjana Jethwa in consideration for retaining the equity interests in the Debtors.

2. The failure to provide any one of these categories of disclosures is sufficient to deny approval of the Disclosure Statement. The Disclosure Statement contains none of these disclosures. Accordingly, the Disclosure Statement does not contain adequate information to enable a hypothetical investor to make an informed judgment about the Plan. Approval of the Disclosure Statement should be denied.

## BACKGROUND

3. The Landlord is the owner of real property located at 160 Spring Valley Market Place, Spring Valley, New York (the "Spring Valley Location"), which Landlord leased to JFM

[2] Capitalized terms used but not defined in the Preliminary Statement will have the meaning ascribed to them below.

Spring LLC ("JFM Spring") pursuant to that certain Agreement of Lease dated August 22, 1996 between Landlord and Jambys Inc., which was subsequently assigned to JFM Spring pursuant to that certain Assignment, Assumption and Extension of Lease Agreement, dated June 1, 2006 (together with all amendments, the "Lease"). Since 2006, JFM Spring has operated at Burger King ® franchised restaurant at the Spring Valley Location.

4. On May 5, 2026 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned chapter 11 cases in the U.S. Bankruptcy Court, District of New Jersey, administered under Lead Case No. 26-15123 (the "Chapter 11 Cases").

5. On June 25, 2026, the Debtors filed their Plan and the Disclosure Statement, together with the Motion, seeking entry of an order (i) conditionally approving the Disclosure Statement, (ii) scheduling a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan, and (iii) for related relief.

6. As relevant to this Objection, the Disclosure Statement states,

> **G. Means of Effectuating the Plan**
>
> The Plan shall be funded by the Debtors' continuing operating receipts, as set forth in the Debtors' projections. The Debtors intend to deidentify the Burger King name and begin operations under a new trademark.
>
> Prior to the Chapter 11 filings, Burger King had terminated the Franchise agreements. Therefore, the Debtors will remove all signage and reference to Burger King. The Debtors estimate that transition expenses shall be approximately $75,000 which will be accomplished before the Effective Date.

*See* Disclosure Statement, Article VIII, Section G.

7. The Debtors have not filed any monthly operating reports in these Chapter 11 Cases, nor has any current or historical financial disclosures been provided in the Disclosure Statement. There is no indication of whether the Debtors have been profitable post-petition and as

a non-Burger King® franchise. Without these disclosures, it is impossible to determine if the projections provided in the Disclosure Statement are realistic, and in turn the Plan is feasible.

8. In addition, without the disclosure of the current and historical financial operations, there is no ability to ascertain whether there are sufficient funds on hand to complete the deidentification of the Burger King® franchise as well as fund the payments under the Plan.

9. Further, JFM Spring has not made the July 2026 rent payment to Landlord and is in arrears post-petition in the amount of $13,924.72. Prior to the Petition Date, JFM Spring owed the Landlord $28,067.77

10. under the Lease. The Disclosure Statement erroneously states that there are no rent arrears owed to Landlord that must be paid and cured so that the JFM Spring may assume the Lease. *See* Disclosure Statement, Article X, Section A. In addition, the Disclosure Statement and Plan fail to provide Landlord with any adequate assurance of future performance in connection with the assumption of the Lease. *Id.*

11. At the minimum, there is currently $41,992.49 (the "Rent Arrears") of rent arrears is due to Landlord from JFM Spring in order to cure the monetary defaults for the Lease to be assumed. The Plan does not provide for payment of the Rent Arrears, and accordingly the Lease cannot be assumed under the Plan. The Disclosure Statement must be amended to (i) include the payment of the Rent Arrears owed to the Landlord, and (ii) provide adequate assurance of JFM Spring's future performance under the Lease.

12. The Disclosure Statement fails to provide the estimated amounts of administrative claims, priority tax claims, and estimated monthly payments to Class 1 and 2 secured creditors under the Plan. *See* Disclosure Statement, Article VII, Sections A and B, Article VIII, Sections B and C. These amounts are necessary to determine the amount required by the Debtors on the

Effective Date to consummate the Plan. This information coupled with the Debtors' current financial position, are necessary to determine whether or not the Plan is feasible. At the minimum, the Debtors will need $241,992.49 on the Effective Date to consummate the Plan - $41,992.49 for the Rent Arrears, plus $200,000 for professional fee claims. *See* Disclosure Statement, Article VII, Section D. The Debtors may require additional funds to complete the deidentification as Burger King®, administrative claims, priority tax claims, and potential post-petition claims Burger King® may have against the Debtors to the extent the Debtors operated as a Burger King® or used its likeness post-petition.

13. The Disclosure Statement indicates that "the Debtors' liquidation analysis (Exhibit C)." *See* Disclosure Statement, Article II. Upon review of Exhibit C to the Disclosure Statement, it is not a liquidation analysis, and rather it is merely an equipment list for each debtor. *See* Disclosure Statement, Exhibit C. As such, the Disclosure Statement fails to include the required liquidation analysis.

14. Lastly, the Plan provides that Ranjana Jethwa will be retaining the equity interest in the Debtors. *See* Disclosure Statement, Article VIII, Section F. Without providing "new value", this provision of the Plan violates the Absolute Priority Rule and is unconfirmable.

15. The omission of these disclosures and information precludes the Debtors from satisfying their obligations to provide full and fair disclosure and does not permit a hypothetical investor to make an informed judgment about the Plan.

**ARGUMENT**

16. By this Objection, the Landlord respectfully requests that this Court deny conditional approval of the Disclosure Statement for the reasons set forth herein.

**A. <u>Standard Governing Approval of Disclosure Statements</u>**

17. The Bankruptcy Code does not permit the solicitation of the acceptance or rejection of a plan unless the Court approves the disclosure statement in connection with the plan as containing "adequate information." Adequate information, in turn, is defined as "information of a kind, and in sufficient detail, . . . that would enable [ ] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

18. Full and fair disclosure is the foundation of chapter 11, and the adequacy of information contained in the disclosure statement is of paramount importance. *See, e.g., In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("Of prime importance in the reorganization process is the principle of disclosure."); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"); *In re Galerie Des Monnaies, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985) ("Preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor.").

19. Because creditors rely on the disclosure statement prior to voting on or considering the *bona fides* of a plan, "it is crucial that a [plan proponent] be absolutely truthful" so that the disclosure statement satisfies section 1125(a)(1) of the Bankruptcy Code. *In re Galeria Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985). It is of prime importance that a proponent's disclosure be "full and fair." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). This requires, at a minimum, the disclosure statement to "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what

contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

20. Whether a disclosure statement contains adequate information should be determined on a case-by-case basis. *See in re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008). At a minimum, however, the disclosure statement must "contain simple clear language delineating the consequences of the proposed plan on claims and the possible Code alternatives so that they can intelligently accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). The legislative history of section 1125 of the Bankruptcy Code states that "[t]he disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders would make an informed judgment about a plan of reorganization." *In re Jeppson*, 66 B.R. 269, 291 (Bankr. D. Utah 1986). The purpose of a disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan." *Duff v. United States Trustee (In re California Fid., Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996). As a result, a disclosure proponent that bear upon the success or failure of the proposals contained in the plan." *In re Scioto Valley*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).

21. To that end, courts have created a non-exclusive list of factors that should be contained in a disclosure statement, including:

i. the events which led to the filing of a bankruptcy petition;

ii. a description of the available assets and their value;

iii. the anticipated future of the company;

iv. the source of information stated in the disclosure statement;

v. a disclaimer;

vi. the present condition of the debtor while in chapter 11;

vii. the scheduled claims;

viii. the estimated return to creditors under a chapter 7 liquidation;

ix. the accounting method utilized to produce financial information, and the name of the accountants responsible for such information;

x. the future management of the debtor;

xi. the chapter 11 plan or a summary thereof;

xii. the estimated administrative expenses, including attorneys' and accountants' fees;

xiii. the collectability of accounts receivable;

xiv. financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

xv. information relevant to the risks posed to creditors under the plan;

xvi. the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

xvii. litigation likely to arise in a nonbankruptcy context;

xviii. tax attributes of the debtor; and

xix. the relationship of the debtor with affiliates.

*In re Phoenix Petroleum,* 278 BR 385, 406 n.6 (Bankr.E.D.Pa.2001).

22. The Debtors' Disclosure Statement in this case does not contain adequate information that would enable a hypothetical investor to make an informed judgment about the Plan because it fails to provide adequate information regarding (i) the Debtors' operations during its Chapter 11 Cases and profitability as a non-Burger King® franchised enterprise; (ii) the source of funding to deidentify as a Burger King® restaurant; (iii) Debtors' financial projections; (iii) erroneous information regarding the cure amounts due to Landlord; (iv) omission of adequate assurance of future performance to Landlord in connection with the assumption of the Spring Valley Lease; (v) estimated amounts of administrative claims; (vi) estimated amount of priority

tax claims; (vii) estimated monthly payments to Class 1 and 2 secured creditors under the Plan; and (viii) the new value to be contributed by Ranjana Jethwa in consideration for retaining the equity interests in the Debtors.

**B. The Disclosure Statement Does Not Contain Adequate Disclosures Regarding The Debtors' Operations Post-Petition and a Non-Burger King® Restaurant**

23. Under applicable caselaw, a disclosure statement should provide financial information, data, valuation or projections relevant to a creditor's decision to vote to accept or reject a plan of reorganization. *See In re Ashley River Consulting, LLC*, Case No. 14-13406 (MG), 2015 WL 6848113, *8 (Bankr. S.D.N.Y. Nov. 6, 2015; *Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr N.D. Ga. 1984); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

24. The Disclosure Statement fails to provide this information. Without financial projections, creditors do not have a meaningful basis upon which to determine whether proposed payments and obligations under the Plan can be paid and satisfied.

25. The profitability of the Debtors operations post-petition, and significantly as a non-Burger King® restaurant is a fundamental concern that impacts the viability of the Debtors, the feasibility of the Plan, and the need for future reorganization. Given that the Debtors operated as a Burger King® restaurant prior to the Petition Date, the prior revenue and expenses are not reliable. While the Debtors assert that the restaurants will maintain their same stream of revenue, there is no basis or support for that assertion. Disclosure of the Debtors' operations as a non-Burger King® restaurant and whether or not it is able to operate at a profit are necessary to determine whether or not the Debtors' Plan is feasible, and accordingly, whether or not creditors should vote to accept or reject the Plan. The omission of this information alone is sufficient to deny approval of the Disclosure Statement.

**C. The Disclosure Statement And Plan Does Not Provide For A Cure Of The Rent Arrears And Adequate Assurance Of <u>Future Performance Required To Assume The Lease</u>**

26. When there has been a default under the executory contract or unexpired lease, a debtor must, at the time of the assumption, comply with the three requirements of § 365(b)(1). First, the debtor must cure (or provide adequate assurance that it will promptly cure) the default. 11 U.S.C. § 365(b)(1)(A). Second, the debtor must compensate or provide adequate assurance that the debtor will promptly compensate, for any pecuniary loss to such party resulting from such default. 11 U.S.C. § 365(b)(1)(B). Third, the debtor must provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1)(C).

27. In order to assume the Lease, the Debtors must cure the Rent Arrears and also provide adequate assurance of future performance of the Lease.

28. To the extent that the Disclosure Statement and Plan are amended to accurately reflect the payment of the Rent Arrears, the Debtors must still provide adequate assurance of future performance to the Landlord. In order to determine whether a debtor has provided adequate assurance, a court must look at the facts and circumstances of each case. *In re DBSI, Inc.,* 405 B.R. 698, 708 (Bankr. D. Del. 2009). Given that the Debtors will no longer be operating Burger King® franchised restaurants, and the lack of any financial reporting in these Chapter 11 Cases, the Debtors have failed to satisfy the requirement of providing adequate assurance of future performance.

**D. <u>The Disclosure Statement Fails To Include the Required Liquidation Analysis</u>**

29. One of the most critical disclosures required in a disclosure statement is a liquidation analysis. The liquidation analysis requires an estimation of the value of all of the bankruptcy estate's assets, including disputed and contingent claims, the potential disallowance of,

the probability of success and value of causes of action held by the estate, and potential preference actions. *See In re Affiliated Foods, Inc.,* 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000).

30. Insofar as the Debtors' purported Liquidation Analysis consists merely of an itemization of each Debtors' equipment, it falls woefully short of the requirements of a meaningful and information liquidation analysis.

31. The lack of inclusion of an adequate liquidation analysis is concerning especially in light of the fact that the Disclosure Statement states that prior to the Petition Date, the Debtors were negotiating a sale of the Spring Valley and Paterson locations, without any disclosure as to the sale prices.

32. The Disclosure Statement's liquidation analysis should be revised to include all of the Debtors' assets, including the investigation and valuation of chapter 5 claims. Without this information, creditors cannot make an informed judgment on whether to vote to accept or reject the Plan.

**E. The Disclosure Statement And Plan Does Not Provide "New Value" For Ranjana Jethwa's Retention Of Equity Interest, Fails The Absolute Priority Rule, And The Plan May Be Unconfirmable**

33. While the issue of whether the Plan satisfies the Absolute Priority Rule is perhaps more of an issue to be decided at confirmation of the Plan, to the extent that "new value" is required by Ranjana Jethwa in consideration for retaining the equity interests, such "new value" is a material term that should be contained in the Disclosure Statement.

34. The Plan provides that Class 4 unsecured creditors are impaired and will share *pro rata* in quarterly distributions of $12,500. *See* Plan §5.4. The Disclosure Statement does not provide any information on the estimated amount of claims in Class 4, but based upon the Debtors'

indication that the treatment is "impaired", the unsecured creditors will not receive payment in full of their claims.

35. In the event that Class 4 fails to vote to accept the Plan, the Debtors will be required to seek a "cram down" confirmation under section 1129(b) of the Bankruptcy Code. The "Absolute Priority Rule", as codified in 11 U.S.C. §1129(b)(2)(B)(ii), provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a plan of reorganization. *Norwest Bank v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963 (1988); *See also, Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 441–42 (1999)(A plan is "fair and equitable" if the holder of any claim or interest that is junior to the claims of such impaired unsecured class will not receive or retain under the plan on account of such junior claim or interest any property.)

36. Courts recognize a "new value" exception to the Absolute Priority Rule, whereby equity may retain an interest in a reorganized debtor over the objection of a class of creditors whose claims are not paid in full, in exchange for a fresh contribution of new capital. *Case v. Los Angeles Lumber Prod. Co.*, 308 U.S. 106, 120, 60 S. Ct. 1, 10, 84 L. Ed. 110 (1939)(citing *Northern Pacific Railway Co. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913) and *Kansas City Terminal Railway Co. v. Central Union Trust Co.,* 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028 (1926)). Although the new value exception to the Absolute Priority Rule preceded the enactment of the Bankruptcy Reform Act of 1978 (better known as the Bankruptcy Code), Courts have continued permitted the "new value" exception. *In re Bonner Mall P'ship*, 2 F.3d 899, 908 (9th Cir. 1993).

37. For existing equity to be permitted to retain or receive interests under the new value exception the five factors in *Los Angeles Lumber* must be met: the contribution must be (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5)

reasonably equivalent to the value or interest received. *In re Bonner Mall Partnership,* 2 F.3d at 908; *In re One Times Square,* 159 B.R. 695, 708 (Bankr.S.D.N.Y.1993), *aff'd* 165 B.R. 773 (S.D.N.Y.1994), *aff'd* 41 F.3d 1502 (2d Cir.1994), *cert. denied,* 513 U.S. 1153, 115 S.Ct. 1107, 130 L.Ed.2d 1072 (1995) (Applying 5 factors, and analyzing use of "new value" capital infusion and whether it is allocated to satisfy creditors' claims or other purposes which would "enhance the value of the interest to be retained"); *In re Woodmere Investors Ltd. Partnership,* 178 B.R. 346 (Bankr.S.D.N.Y.1995)(Sweat equity is not "money's worth" and promise to pay future income is not "new value."); *In re 8315 Fourth Ave. Corp.,* 172 B.R. 725 (Bankr. E.D.N.Y. 1994)(Rejecting non-monetary contribution as "new value."); *In re Gramercy Twins Assocs.,* 187 B.R. 112, 127 (Bankr. S.D.N.Y. 1995)("If a new participant is allowed to purchase an equity interest in a reorganized debtor based upon the new value exception when a dissenting major creditor strenuously objects to the confirmation of the Plan, then this Court believes that it would be inequitable"); *In re Fur Creations by Varriale, Ltd.,* 188 B.R. 754, 763 (Bankr. S.D.N.Y. 1995)(For new value exception, the contribution must be the only source of commercially reasonable financing available to the debtor, making the contribution a lender of last resort, rather than a lender of first opportunity.); *BT/SAP Pool C Assocs., L.P. v. Coltex Loop Central Three Partners, L.P.,* 203 B.R. 527, 534 (S.D.N.Y.1996) (District Court held that old equity's "new value" contribution was not "necessary," because other avenues for funding a successful reorganization had not been adequately explored).

38. Here, it is likely that the Debtors will be required to confirm the Plan under the "cram down" provision under section 1129(b). In that event, the Plan's provision permitting Ranjana Jethwa's retention of equity interests violates the Absolute Priority Rule. In order to confirm the Plan under the "cram down" provisions, "new value" must be provided by Ranjana

Jethwa in consideration for the retention of the equity interests. Such "new value" is a material terms for creditors to consider in determining whether to vote to accept or reject the Plan, and accordingly should be disclosed in the Disclosure Statement. Without this information, creditors cannot make an informed judgment on whether to vote to accept or reject the Plan.

**RESERVATION OF RIGHTS**

39. Landlord reserves the right to (a) amend, supplement, or otherwise modify this Objection; and (ii) appear and be heard at any hearing with respect to the Motion, Disclosure Statement, and Plan.

40. Nothing in this Objection shall be construed as a waiver or release of any claims or rights that Landlord may have against the Debtors, all of which are expressly reserved.

**WHEREFORE**, for all the reasons set forth herein, the Landlord respectfully requests that the Court order deny the conditional approval of the Disclosure Statement, and grant the Landlord such other and further relief as the Court deems just and proper.

Dated: Scarsdale, New York
July 10, 2026

KIRBY AISNER & CURLEY LLP
*Attorneys for Exit 14 Associates, L.P.*

By: *_/s/ Rosemarie E. Matera_*
Rosemarie E. Matera, Esq.
Julie Cvek Curley, Esq.
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
RMatera@kacllp.com