**JULY 20, 2026**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>JFM. 6090, LLC., d/b/a BURGER KING, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-15123 (JKS)<br>(Jointly Administered) |

**SECOND AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN PROPOSED BY THE DEBTORS-IN-POSSESSION**

PLEASE READ THIS SECOND AMENDED DISCLOSURE STATEMENT (THIS "**DISCLOSURE STATEMENT**") CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR ON YOUR DECISION TO ACCEPT OR REJECT THE SECOND AMENDED PLAN OF REORGANIZATION (THE "**PLAN**"), WHICH IS ANNEXED HERETO AS **EXHIBIT A**, BEING PROPOSED BY J.F.M. 6090, LLC, JFM SPRING LLC, AND JFM SPARTA, LLC (COLLECTIVELY, THE "**DEBTORS**" OR "**PLAN PROPONENTS**").

THE DEBTORS BELIEVE THAT THIS PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE DEBTORS URGE THAT CREDITORS ENTITLED TO VOTE ACCEPT THE PLAN.

**TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
Stephen M. Gengaro, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law
Email: sgengaro@trenkisabel.law

*Counsel to Chapter 11 Debtors and Debtors-in-Possession*

[1] The Debtors in these Chapter 11 cases, along with their case numbers are as follows: J.F.M. 6090, Inc., Case No. 26-15123 (JKS); JFM Spring LLC, Case No. 26-15124 (JKS); and JFM Sparta, LLC, Case No. 26-15275(JKS).

**JULY 20, 2026**

## TABLE OF CONTENTS


**DISCLAIMER** .......... 1
**ARTICLE II PURPOSE OF THIS DISCLOSURE STATEMENT** .......... 2
**ARTICLE III CONFIRMATION PROCEDURES** .......... 3
**A. Requirements for Confirmation** .......... 3
**B. Persons Potentially Eligible to Vote on the Plan** .......... 4
**C. Plan Voting Procedures** .......... 4
1. Deadline For Voting For or Against the Plan .......... 5
2. Acceptance of Plan .......... 6
**D. Time and Place of the Confirmation Hearing** .......... 6
**E. Procedure for Objections to Confirmation of the Plan** .......... 6
**F. Identity of Person to Contact for More Information Regarding the Plan** .......... 7
**ARTICLE IV BACKGROUND AND SUMMARY OF CHAPTER 11 CASE** .......... 7
A. **Background of Ranjana Jethwa, Individually** .......... 7
B. **Background of Burger King Franchises** .......... 7
D. Background of the Debtors .......... 9
**G. Capital Structure** .......... 10
**i. First Franchise Capital Corporation** .......... 10
**ii. The Small Business Administration** .......... 12
**H. Lease Agreements** .......... 13
**ARTICLE V THE DEBTORS' CHAPTER 11 BANKRUPTCY** .......... 13
**A. The Debtors' Chapter 11 Filing** .......... 13
i. First Day Orders .......... 13
ii. Employment of Professionals and Advisors .......... 14
iii. Claims Process and Bar Date .......... 14
**B. Current and Historical Conditions** .......... 15
**C. Issues Raised by Parties in the Bankruptcy Cases** .......... 15
1. Burger King .......... 15
2. Exit 14 Associates, L.P. .......... 15
3. Spring Bank .......... 15
**ARTICLE VI SUMMARY OF THE PLAN OF REORGANIZATION** .......... 16
**A. What Creditors Will Receive Under the Proposed Plan** .......... 16
**B. Classification of Claims** .......... 16
**C. Unclassified Claims** .......... 17
**E. Impaired Classes of Claims** .......... 17
**ARTICLE VII TREATMENT OF UNCLASSIFIED CLAIMS** .......... 18
**A. Administrative Expenses Claims** .......... 18
**B. Priority Tax Claims** .......... 18
**C. U.S. Trustee Fees** .......... 18
**D. Fee Claims** .......... 19
**ARTICLE VIII TREATMENT OF CLAIMS** .......... 19
**A. Estimates of Claims** .......... 19
**B. Treatment of Class 1A, B, and C (Priority Non-Tax Claims)** .......... 20
**C. Classes of Secured Claims** .......... 20
**D. Classes of Priority Unsecured Claims** .......... 21
**E. Class of General Unsecured Claims** .......... 21
**F. Class of Interests** .......... 22

**G. Means of Effectuating the Plan ........ 22**
**H. Risk Factors ........ 22**
**ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ........ 23**
**A. Disbursing Agent ........ 23**
**B. Manner of Payment ........ 23**
**C. Payments and Distributions on Disputed Claims ........ 23**
**D. Disputed Claim Reserve ........ 23**
**E. Transmittal of Distributions to Parties Entitled Thereto ........ 23**
**F. Distribution of Unclaimed Property ........ 23**
**G. Saturday, Sunday or Legal Holiday ........ 24**
**H. Setoffs and Recoupment ........ 24**
**I. Fractional Cents and *De Minimis* Distributions ........ 24**
**K. Allowance and Disallowance of Claims ........ 24**
**L. Resolution of Disputed Administrative Expense Claims and Disputed Claims ........ 25**
**M. Controversy Concerning Impairment ........ 25**
**ARTICLE X TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 25**
**A. Executory Contracts and Unexpired Leases ........ 25**
**b. Bar to Rejection Damages ........ 26**
**ARTICLE XI CONFIRMATION AND CONSUMMATION OF THE PLAN ........ 26**
**A. Conditions Precedent to the Effective Date ........ 26**
**B. Notice of Effective Date ........ 26**
**C. Waiver of Conditions Precedent to the Effective Date ........ 26**
**ARTICLE XII EFFECTS OF CONFIRMATION ........ 26**
**A. Authority to Effectuate Plan ........ 26**
**B. Binding Effect ........ 27**
**C. Discharge of the Debtors ........ 27**
**D. Release and Discharge of Committee ........ 27**
**ARTICLE XIII EFFECT OF PLAN ON CLAIMS AND INTERESTS ........ 27**
**A. General Injunction ........ 27**
**B. Release by Debtors ........ 28**
**C. Exculpation ........ 29**
**D. Vesting of Assets in Reorganized Debtors ........ 29**
**E. Causes of Action ........ 29**
**ARTICLE XIV RETENTION OF JURISDICTION ........ 30**
**ARTICLE XV MISCELLANEOUS PROVISIONS OF THE PLAN ........ 32**
**A. Amendment or Modification of the Plan ........ 32**
**B. Revocation or Withdrawal of the Plan ........ 32**
**C. Reports ........ 32**
**D. Severability of Plan Provisions ........ 32**
**E. No Interest ........ 33**
**F. Allocation of Distributions Between Principal and Interest ........ 33**
**G. Notices ........ 33**
**H. Controlling Documents ........ 33**
**I. Filing of Additional Documents ........ 33**
**J. Reservation of Rights ........ 34**

**K. Computation of Time ........ 34**
**L. Successors and Assigns ........ 34**
**M. Waiver of Subordination ........ 34**
**N. Post-Effective Date Professional Fees ........ 34**
**O. Governing Law ........ 34**
**P. Headings ........ 35**
**Q. No Admissions ........ 35**
**ARTICLE XVI RISK FACTORS/TAX CONSEQUENCES ........ 35**
**A. Tax Consequences of Plan ........ 35**
**B. Bankruptcy Risk Factors ........ 36**
**C. Other Factors ........ 40**
**ARTICLE XVII FEASIBILITY OF THE PLAN ........ 40**
**ARTICLE XXVIII BEST INTERESTS TEST ........ 41**

## DISCLAIMER

**THIS DISCLOSURE STATEMENT FOR THE PLAN AND RELATED MATERIALS DELIVERED HEREWITH ARE BEING PROVIDED BY THE PLAN PROPONENTS TO KNOWN HOLDERS OF CLAIMS PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.[2]**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

**FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, NOR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS. CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

---

[2] Capitalized terms used but not defined herein shall have the same meaning ascribed to such term in the Plan.

## ARTICLE I
## INTRODUCTION

On the Petition Date, the Debtors each commenced their respective bankruptcy case by filing voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Chapter 11 of the Bankruptcy Code allows the Debtors to propose a plan of reorganization. Since the Petition Date, the Debtors have remained in possession of their assets and management of their affairs as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The document you are reading is the Disclosure Statement for the Plan which is annexed hereto as **Exhibit A**. The Plan constitutes a Chapter 11 plan of reorganization. Except as set forth in the Plan or otherwise provided by order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter. In the Plan Proponent's opinion, the treatment of Claims under the Plan provides a greater recovery for Creditors than that which is likely to be achieved under other alternatives.

**Accordingly, the Plan Proponents believe that Confirmation of the Plan is in the best interests of all Creditors and, therefore, urges all Creditors to vote to accept the Plan.**

## ARTICLE II
## PURPOSE OF THIS DISCLOSURE STATEMENT

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan. This Disclosure Statement contains the following exhibits: (i) the Plan (**Exhibit A**); (ii) Financial Projections (**Exhibit B**); and (iii) the Debtors' liquidation analysis (**Exhibit C**).

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW

ABOUT:

(1) WHO CAN VOTE OR OBJECT,

(2) THE PROPOSED TREATMENT OF YOUR CLAIM (I.E., WHAT YOUR CLAIM WILL RECEIVE IF THE PLAN IS CONFIRMED), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION,

(3) THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4) WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,

(5) THE EFFECT OF CONFIRMATION, AND

(6) THE FEASIBILITY OF THE PLAN.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Bankruptcy Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about the Debtors and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the Debtors to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("**Court**") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Bankruptcy Code Section 1125.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtors or who have filed a proof of claim against the Debtors as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

## ARTICLE III
## CONFIRMATION PROCEDURES

**THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL HOLDERS OF CLAIMS IN THE CHAPTER 11 CASE.**

If the Plan is confirmed, the Distributions provided for in the Plan will be in exchange for, and in complete satisfaction, discharge and release of, all Claims against the Debtors or any of its assets or properties, including any Claim accruing after the Petition Date and before the Effective Date. Except as set forth otherwise in the Plan, as of the Effective Date of the Plan, all Holders of Claims will be precluded from asserting any Claim against the Debtors, the Reorganized Debtors or their assets, or other interests in the Debtors or the Reorganized Debtors based on any transaction or other activity of any kind that occurred before the Effective Date.

### A. Requirements for Confirmation

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Debtors

CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in this Chapter 11 Case are that the Plan (a) is accepted by Impaired Classes that have the right to vote; and (b) the Plan is feasible. The Bankruptcy Court must also find that:

1. the Plan has classified Claims in a permissible manner;

2. the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

3. the Plan has been proposed in good faith. *See* 11 U.S.C. §§ 1123, 1129.

**B. Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if submitted by a Creditor whose claim is duly scheduled by the Debtors as undisputed, non-contingent and unliquidated, or who, prior to the hearing on Confirmation of the Plan, has filed with the Bankruptcy Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your Claim has been correctly scheduled, you should check the Debtors' Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. The Clerk of the Bankruptcy Court will not provide this information by telephone.

The following are the unclassified Claims: Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, Priority Tax Claims, and DIP Claims. Unclassified Claims are not Impaired by the Plan. Each Holder of an unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

Classes 2, 3, 4, 5, 6, 7, 8, 9, and 10 are Impaired under the Plan and are entitled to vote on the Plan.

**C. Plan Voting Procedures**

The Ballots received by Holders of Impaired Claims do not constitute a proof of claim. If a creditor is uncertain whether its claim has been correctly scheduled, the creditor should check the Debtors' Schedules, which are on file at the Office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### 1. Deadline For Voting For or Against the Plan

In order for a Ballot to count, the creditor must (1) complete, date and properly execute the Ballot and (2) properly deliver the Ballot to Debtors' counsel by mail or overnight courier at the following address:

Trenk Isabel Siddiqi & Shahdanian P.C.
290 West Mount Pleasant Avenue, Suite 2370
Livingston, New Jersey 07039
Attn: Richard D. Trenk, Esq.

Debtors' counsel must **ACTUALLY RECEIVE** original ballots on or before **August 18, 2026 at 5:00 p.m.** (prevailing Eastern Time) (the "Voting Deadline"). Except as otherwise provided, you may not change your vote once Debtors' counsel receives your ballot.

Any ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

The following ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

1. any ballot received after the Voting Deadline, unless the Debtors grant an extension of the Voting Deadline with respect to such ballot or the Bankruptcy Court grants such an extension;

2. any ballot that is illegible or contains insufficient information to permit the identification of the claimant after the Debtors reach out to the person or entity that submitted such Ballot for clarification;

3. any ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

4. any ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Rule 3018(a) motion has been filed by the Rule 3018(a) motion deadline;

5. any ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan; or

6. any unsigned ballot.

**Voting Questions.** If there are any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing a Ballot, creditors may contact counsel to the Debtors, Richard D. Trenk, Esq. or Robert S. Roglieri, Esq. at 973-533-1000 or by emailing them at rtrenk@trenkisabel.law or rroglieri@trenkisabel.law.

### 2. Acceptance of Plan

The acceptance of the Plan by Impaired Creditors is important. In order for the Plan to be accepted by Impaired Creditors, a majority in number (*i.e.,* more than half) and two-thirds in dollar amount of the Impaired Classes that vote must vote to accept the Plan. The Debtors urge that Creditors vote to accept the Plan. **CREDITORS ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THEIR BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF THE CREDITOR'S CLAIM AND THE NAME OF THE CREDITOR.**

### D. Time and Place of the Confirmation Hearing

The hearing at which the Bankruptcy Court will determine whether to confirm the Plan will begin on **August 25, 2026 at 11:00 A.M. (prevailing Eastern Time)** in Courtroom 3D of the United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the hearing.

### E. Procedure for Objections to Confirmation of the Plan

Any objection to Confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount of the Claim of such party; and (c) state with particularity the grounds for the objection. Any objection must be filed with the Bankruptcy Court and served so as to be actually received on or before **August 18, 2026 at 4:00 P.M. (prevailing Eastern Time)** (the "**Objection Deadline**") by:

| | |
|---|---|
| *The Debtors and Reorganized Debtors* | Richard D. Trenk, Esq.<br>Robert S. Roglieri, Esq.<br>Stephen M. Gengaro, Esq.<br>Trenk Isabel Siddiqi & Shahdanian P.C.<br>290 W. Mt. Pleasant Ave., Suite 2350<br>Livingston, New Jersey 07039<br>rtrenk@trenkisabel.law<br>rroglieri@trenkisabel.law<br>sgengaro@trenkisabel.law |
| *The Office of the United States Trustee* | Fran B. Steele, Esq.<br>U.S. Department of Justice<br>Office of the United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard, Suite 2100<br>Newark, New Jersey 07102<br>fran.b.steele@usdoj.gov |

**Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.**

### F. Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Debtors' counsel, Richard D. Trenk, Esq. or Robert S. Roglieri, Esq. at Trenk Isabel Siddiqi & Shahdanian P.C., 290 W. Mt. Pleasant Ave., Suite 2370, Livingston, New Jersey 07039, telephone (973) 533-1000 or by emailing rroglieri@trenkisabel.law.

## ARTICLE IV
## BACKGROUND AND SUMMARY OF CHAPTER 11 CASE

### A. Background of Ranjana Jethwa, Individually

Ms. Ranjana Jethwa ("**Ranjana**") was born on December 14, 1952 and is currently 73 years old. She was born in Poona, India. She grew up in Bombay with her parents. She graduated with a Bachelor of Arts Degree from Elphinstone College in Bombay. She was married in 1978 to Ramesh Jethwa ("**Ramesh**").

Ramesh was an electronic engineer who came to the United States of America in 1972 with $8.00. He obtained a job with the State of Michigan and lived in Haslett which is a suburb of Lansing, the State Capital of Michigan.

Ramesh studied electronic engineering at Michigan State University. After graduation, he initially got a job with Bectel in Rahway, New Jersey before moving back to Lansing, Michigan.

Ramesh and Ranjana had three (3) children in Michigan. They worked at and eventually bought a dry cleaning business in East Lansing which we sold in 1989. In or about 1990, they moved back to New Jersey.

### B. Background of Burger King Franchises

Initially, Ranjana and Ramesh lived in Ledgewood, Morris County, New Jersey and in 1990 bought a Burger King® located at the Willowbrook Mall in Wayne. This store closed in or about 2002.

Next, in approximately 1992, they purchased the Burger King® Store located at 12-14 Spruce Street in Paterson, New Jersey operating as JFM 6090 ("**JFM 6090**").

In approximately 1994-1996, they sought to open a Burger King® at Short Hills Mall which eventually became an Everything Yogurt Salad Cafe. This cost approximately $750,000 and was unsuccessful.

Next, in approximately 1999, they bought a Burger King® in Secaucus at Mill Creek Mall. This store closed in approximately 2004.

In December 1998, they purchased their primary residence 194 Eileen Drive in Cedar Grove, New Jersey, where they have lived for approximately 28 years. Their residence has two (2) mortgages totaling approximately $600,000.

In 2000, they purchased and built a Burger King® in Haledon, New Jersey. They sold that property in December 2025 for approximately $4.5 million. All of the net proceeds were paid to First Franchise Capital Corp. ("**FFCC**").

In 2002-2004, they purchased the building and rights to operate a Burger King® on Hamburg Turnpike in Wayne. They also sited a Popeye's at the location in 2008. That property filed Chapter 11 bankruptcy in 2023 and closed. *See In re JFM Hamburg LLC*, Case No. 23-10057 (JKS). The Hamburg Chapter 11 was the subject of a settlement agreement which was approved and the proceedings dismissed.

They owned two (2) Dunkin Donuts in Paterson beginning in 2003-2004. These stores were sold in 2019 for approximately $1.8 million.

In 2010, they purchased a Burger King® in Sparta which is still operating (operating as JFM Sparta, LLC ("**JFM Sparta**")). As part of that transaction, they purchased a store in West Nyack, New York which has since closed.

In 2006, they purchased a Burger King® in Spring Valley, New York for approximately $600,000 (operating as JFM Spring, LLC ("**JFM Spring**")).

There are approximately 20 years left with regard to the Leases with extension for the Spring Valley and Sparta locations.

In 2011, Jethwa Management hired Mayank Patel as Finance Controller. Mr. Patel continues to serve with distinction. His rate of compensation is $78,000 per annum.

The three (3) remaining stores have gross sales of the following approximate amounts: Paterson – approximately $2 million annually; Spring Valley - approximately $2 million annually; and Sparta - approximately $1 million annually.

They owe New Jersey and New York sales tax of approximately $800,000 for all there (3) stores and some of the residual stores.

Burger King® asserts it is owed royalties of approximately $590,000 with regard to the remaining stores.

Ramesh died suddenly on December 19, 2018.

### C. The Debtors' Management

Ranjana owns 100% of JFM 6090, JFM Spring and JFM Sparta's ownership interests. Ranjana has approximately 36 years of experience in the restaurant industry and other retail businesses. Mayank Patel serves as Chief Finance Officer and has worked with the Jethwas since 2011. Mayank Patel received his MBA from Rutgers University in 2014.

**D. Background of the Debtors**

JFM 6090 is a New Jersey corporation formed in 1993 and operates at 12-14 Spruce Street, Paterson, New Jersey ("**Paterson Location**"). The Paterson Location consists of 34,488 square foot parcel of property, including an approximately 2,200 square foot storefront. The Paterson Location is the subject of a 40-year lease at $15,000 per month, which terminates on December 31, 2050. The Debtors lease their premises from Falls View, LLC ("**Falls View**"), a related entity. The Paterson Location was purchased in 1993 by Falls View for $475,000. The current lease is dated January 2011 for 40 years

JFM 6090 employs approximately 21 employees, including a restaurant manager and various hourly employees.

JFM Spring is a New York corporation formed in 2006 and operates at 160 Spring Valley Market Pl, Spring Valley, New York ("**Spring Valley Location**"). Since 2006, JFM Spring operated a Burger King® franchised restaurant at the Spring Valley Location, until July 2026 when the franchise agreement was terminated. Beginning on or about August 10, 2026, JFM Spring will operate as a Jumbo King Burger restaurant.Exit 14 Associates, P.C., the landlord for the Spring Valley location asserts as follows: The Spring Valley Location consists of 2,900 square foot parcel of property. The real property is owned by Exit 14 Associates, L.P. ("Exit 14") which leases the property to Debtor JFM Spring pursuant to that certain Agreement of Lease dated August 22, 1996 between Landlord and Jambys Inc., which was subsequently assigned to JFM Spring pursuant to that certain Assignment, Assumption and Extension of Lease Agreement, dated June 1, 2006 (together with all amendments, the "Lease"). On or about September 9, 2010, Exit 14 sold the building on the property to JFM Spring Properties, LLC, a related non-debtor entity. In connection with the sale of the building, the Lease between Exit 14 and Debtor JFM Spring was modified and extended and referenced a sublease agreement between Debtor JFM Spring, as "Tenant", and JFM Spring Properties, as "Subtenant." The Lease was modified and extended on or about November, 2014, and most recently on or about July, 2022. The Lease, pursuant to the most recent 2022 modification, provides that the term under which JFM Spring, as "Tenant," is entitled to lease the premises is extended through September 30, 2045, amongst other terms. The rent due under the Lease is currently consists of "minimum rent" of $100,000 per year triple net, plus a "break even" additional rent computed at 5% of the gross sales in excess of $100,000.

Spring Bank asserts that the Lease was assigned to an affiliate of the Debtor, JFM Spring Properties, LLC ("Spring Properties"), that the Debtor JFM Spring occupies the premises as a subtenant of Spring Properties and that the Lease is subject to both a Leasehold Mortgage encumbering both the Lease and the building located on the property, in addition to an assignment of leases and rents in favor of Spring Bank. Spring Bank further asserts that it is a fully secured creditor entitled to foreclose upon its mortgages. The Debtor disputes Spring Bank's position and the subject dispute may require resolution by agreement or adjudication.

JFM Spring employs approximately 24 employees, including a restaurant manager and various hourly employees.

JFM Sparta is a New Jersey corporation formed in 2010 and operates at 49 Sparta Ave N. Sparta, New Jersey ("**Sparta Location**"). The Sparta Location consists of 2,750 square foot parcel

of property. JFM Sparta leases its premises from 33 New Lincoln LLC for $10,427.20 per month. The lease term is 23 years and 7 months.

JFM Sparta employs approximately 14 employees, including a restaurant manager and various hourly employees.

### E. The Debtors' Assets

The Debtors' assets consist of three restaurant operations including kitchen equipment, food stuffs, machinery, tables and chairs.

### F. Circumstances Leading To Bankruptcy

The Debtors were attempting to negotiate a consensual sale of the Spring Valley and Paterson operations but the amounts involved would not resolve the remaining debts.

Prior to the Chapter 11 filing, the Burger King ® franchise agreement under which the Debtors operated, was terminated. Notwithstanding, the Debtors believe they can implement a cost saving by eliminating the Burger King® royalties and mandated third-party vendors and promotions and discounts.

Despite these operational issues, the Debtors are confident that through the Chapter 11 process, it can reorganize and restructure its debts based upon its strong past performance and market experience.

### G. Capital Structure

#### i. First Franchise Capital Corporation

On or about July 14, 2017, FFCC and Falls View, JFM Sparta Properties, LLC ("**JFM Sparta Properties**"), JFM Rochelle 13534 L.L.C. ("**JFM Rochelle**"), JFM Nyack, LLC ("**JFM Nyack**"), JFM Haledon Properties, LLC ("**JFM Haledon Properties**"), JFM Carlstadt Properties, L.L.C. ("**JFM Carlstadt Properties**"), JFM Wayne LLC ("**JFM Wayne**"), JFM Spring, JFM Spring Properties, LLC ("**JFM Spring Properties**"), JFM Rochelle Properties, LLC ("**JFM Rochelle Properties**"), JFM Haledon LLC ("**JFM Haledon**"), JFM Carlstadt 13850, L.L.C. ("**JFM Carlstadt 13850**"), JFM Wayne Properties, LLC ("**JFM Wayne Properties**"), JFM Sparta, and the Debtors (collectively, the "**Borrowers**") executed a Master Loan Agreement (the "**Loan Agreement**").

The Loan Agreement was subsequently modified on July 8, 2019, April 5, 2020, June 3, 2020 and April 9, 2021.

Pursuant to the Loan Agreement, as modified, FFCC issued three loans to the Borrowers for the Borrowers' use in operating approximately seven restaurant locations in two states franchised by Burger King®.

Pursuant to the Loan Agreement, as modified, FFCC issued three loans to the Borrowers for the Borrowers' use in operating approximately seven restaurant locations in two states franchised by Burger King®.

Specifically, on or about July 14, 2017, Borrowers executed and delivered to FFCC a secured promissory note in the original principal amount of $3,800,000.00 ("**Note A**").

On or about July 14, 2017, Borrowers executed and delivered to FFCC another secured promissory note in the original principal amount of $3,350,000.00 ("**Note B**").

On or about April 9, 2021, Note B was amended and restated by virtue of an Amended and Restated Secured Promissory Note in the original principal sum of $2,282,171.10 ("**Amended Note B**").

On or about April 19, 2021, Borrowers executed and delivered to FFCC a third secured promissory note in the original principal amount of $133,500.00 ("**Note C**").

In total, FFCC loaned Borrowers $7,283,500.00 in original principal pursuant to the Loan Agreement - as originally executed and then amended or modified from time to time - and the Notes.

Pursuant to the Loan Agreement and to secure the Obligations, the following Security Agreements were executed in favor of FFCC: (a) Security Agreement dated as of July 14, 2017 from Falls View with respect to the collateral described therein; (b) Security Agreement dated as of July 14, 2017 from JFM Sparta Properties with respect to the collateral described therein; (c) Security Agreement dated as of July 14, 2017 from JFM Rochelle 13534 with respect to the collateral described therein; (d) Security Agreement dated as of July 14, 2017 from JFM Nyack with respect to the collateral described therein; (e ) Security Agreement dated as of July 14, 2017 from JFM Haledon Properties with respect to the collateral described therein; (f) Security Agreement dated as of July 14, 2017 from JFM Carlstadt Properties with respect to the collateral described therein; (g) Security Agreement dated as of July 14, 2017 from JFM Wayne with respect to the collateral described therein; (h) Security Agreement dated as of July 14, 2017 from JFM Spring with respect to the collateral described therein; (i) Security Agreement dated as of July 14, 2017 from JFM Spring Properties with respect to the collateral described therein; (j) Security Agreement dated as of July 14, 2017 from JFM Rochelle Properties with respect to the collateral described therein; (k) Security Agreement dated as of July 14, 2017 from JFM Haledon with respect to the collateral described therein; (l) Security Agreement dated as of July 14, 2017 from JFM Carlstadt 13850 with respect to the collateral described therein,; (m) Security Agreement dated as of July 14, 2017 from JFM Wayne Properties with respect to the collateral described therein; (n) Security Agreement dated as of July 14, 2017 from JFM Sparta with respect to the collateral described therein; (o) Security Agreement dated as of July 14, 2017 from JFM 6090 with respect to the collateral described therein (collectively, the "**Security Agreements**").

FFCC alleges that these security interests[3] were perfected by virtue of the filing of UCC Financing Statements.

[3] Collectively, FFCC's collateral under the relevant agreements shall be referred to as the "**FFCC Collateral**".

In addition to the Security Agreements, the following guaranties were executed in favor of FFCC: (a) Guaranty dated July 14, 2017, executed by me ("**Guaranty 1**"); and (b) Guaranty dated July 14, 2017, executed by Jethwa Management ("**Guaranty 2**" and, collectively with Guaranty 1, the "**Guaranties**").

Pursuant to Guaranty 2 and to secure the Obligations, Jethwa Management executed a Security Agreement in favor of FFCC dated as of July 14, 2017, with respect to the collateral described therein (the "**Guaranty Security Agreement**"). FFCC asserts that the Guaranty Security Agreement is secured by a UCC-1 filing.

Due to COVID-19, the Borrowers fell out of compliance with the Loan Agreement.

On February 23, 2022, FFCC and Borrowers entered into a Forbearance Agreement providing the Borrowers through June 9, 2022 to satisfy certain conditions regarding the existing defaults.

By virtue of a Second Forbearance Agreement dated as of May 20, 2022, the Borrowers were provided through July 9, 2022 to satisfy certain conditions regarding the existing defaults.

By virtue of a Third Forbearance Agreement dated as of July 29, 2022, the Borrowers were provided through October 9, 2022 to satisfy certain conditions regarding the existing defaults.

The Third Forbearance Agreement required the Borrowers to pay all of the Obligations on or before October 9, 2022.

As a result of these defaults, on October 2, 2023, FFCC filed a complaint in Superior Court of New Jersey, Bergen County, Law Division commencing an action captioned *First Franchise Capital Corporation v. Falls View, LLC* at Docket No. BER-L-5271-23 (the "**State Court Action**").

On August 8, 2024, the State Court entered a default judgment against the Borrowers, including the Debtors, in the amount of $6,600,050.98 plus post-judgment interest (the "**Judgment**").

On December 18, 2025, Borrower Haledon Properties, LLC sold certain real estate and paid FFCC $4,194,310.96 from the proceeds of the sale.

On April 29, 2026, FFCC filed a Motion on Short Notice to Appoint Receiver in Aid of Execution Pursuant to N.J.S.A. 2A:17-66 (the "**Receiver Motion**"). The Receiver Motion was scheduled to be heard on May 8, 2026.

After applying the amount received, FFCC asserts that the balance of the Loans was $3,259,108.17 as of March 2, 2026.

**ii. The Small Business Administration**

On or about August 30, 2020, the U.S. Small Business Administration ("**SBA**") filed a UCC-1 against the Debtors. The SBA asserts a lien in, amongst other things, the Debtors' inventory, equipment, and accounts.

The SBA is owed approximately $150,000 from each of the three (3) Debtors. The loans are all 20 year loans at 3.75% interest per annum.

### H. Lease Agreements

JFM 6090 rents 12-14 Spruce Street, Paterson, New Jersey from Falls View. The Lease is dated January 2011 for 40 years ending December 31, 2050 with a rent payment of $18,000 per month.

JFM Spring rents 160 Spring Valley Marketplace, Spring Valley, New York 10977 from Exit 14. A further explanation of the Spring Valley lease is contained herein in the Background of the Debtors, Section D, p. 9.

JFM Sparta rents 49 South Sparta Avenue, Sparta, New Jersey 07871 from 33 New Lincoln LLC. The Lease is October 2009 with a term of twenty-three (23) years and seven (7) months.

## ARTICLE V

## THE DEBTORS' CHAPTER 11 BANKRUPTCY

### A. The Debtors' Chapter 11 Filing.

The Debtors filed their respective voluntary Chapter 11 petitions on May 5, 2026 and May 11, 2026.

#### i. First Day Orders

Concurrently with the filing of their chapter 11 petition, the Debtors filed certain motions and proposed Orders (collectively, the "**First-Day Orders**"). A summary of the relief granted in the First Day Orders is set forth below:

(a). **Cash Collateral Order**. Pursuant to the *Motion Pursuant to 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), Fed. R. Bankr. P. 4001(b), and D.N.J. L.B.R. 4001-4 for Interim and Final Orders Authorizing Use of Cash Collateral* [ECF 3], the Bankruptcy Court entered various orders [ECF 25, 52] that, among other things, (i) permitted the Debtors to continue to use cash collateral; and (ii) granted the secured lender replacement liens and adequate protection.

(b). **Cash Management Order**. Pursuant to the *Motion For An Order (I) Authorizing The Debtor To Continue And Maintain Their Existing Cash Management System, Bank Accounts And Business Forms, (II) Modifying*

*The Investment Guidelines, (III) Providing The United States Trustee With A 60-Day Objection Period, And (IV) Granting Related Relief* [ECF 6], the Bankruptcy Court entered an Interim Order [ECF 28] and a Final Order [that, among other things, (i) authorized the Debtor to continue to use its existing bank accounts and cash management system, and existing checks and business forms; and (ii) waived certain bank account and related requirements of the Office of the United States Trustee.

(c). **Utilities Order**. Pursuant to the *Motion For Entry Of Interim And Final Orders (I) Prohibiting Utility Companies From Discontinuing, Altering Or Refusing Service On Account Of Prepetition Invoices, (II) Deeming The Utility Companies Adequately Assured Of Future Performance On The Basis Of Payment Of A Two-Week Security Deposit, And (III) Establishing Procedures For Resolving Requests For Additional Adequate Assurance* [ECF 4], the Bankruptcy Court entered an Interim Order [ECF 26] and a Final Order [ECF 53] authorizing and approving the provision of adequate assurance of payment to the Debtor's utility service providers under section 366 of the Bankruptcy Code, while allowing the Debtor to avoid the threat of imminent termination of their utility services from those utility companies.

(d). **Wages Order**. *Pursuant to the Motion for entry of an order (i) authorizing the Debtor to (a) pay Prepetition Wages and related obligations, (b) pay and remit Payroll Taxes and other deductions to third parties, and (c) honor and process workers' compensation and employee benefit obligations, and (ii) authorizing and directing all banks to honor checks and transfers for payment of prepetition Employee Obligations* [ECF 4], the Bankruptcy Court entered an Order [ECF 27] authorizing and approving the Debtor to pay employee wages.

### ii. Employment of Professionals and Advisors

On May 5, 2026, the Debtors each filed an application to approve the retention of Trenk Isabel Siddiqi & Shahdanian P.C. ("**TISS**") as counsel. [ECF 7]. The order authorizing this retention was entered on May 27, 2026. [ECF 38].

On May 21, 2026, the Debtor filed an application to approve the retention of Dorfman Abrams Music, LLC ("**DAM**") as its accountant. [ECF 33]. The order authorizing this retention was entered on May 27, 2026. [ECF 39].

### iii. Claims Process and Bar Date

#### a. Schedules and Statement of Financial Affairs

On the Petition Date, the Debtors filed for protection under Chapter 11 of the Bankruptcy Code. [ECF 1]. The Debtors' schedules and statement of financial affairs (as amended, the "**Debtors' Schedules**") were filed simultaneously with the Chapter 11 Petition.

**b. Section 341(a) Meeting of Creditors**

The Debtor's Section 341(a) Meeting of Creditors was held on June 10, 2026. The Debtor's Initial Debtor Interview was held on June 10, 2026.

**c. Bar Date**

The Court established July 14, 2026 (the "**Bar Date**") as the deadline for Creditors, excluding Governmental Units, to file proofs of Claim in this Chapter 11 Case.

**B. Current and Historical Conditions**

The Debtors are current, or intend to become current, on all post-petition obligations. Debtors' Monthly Operating Reports for May 2026 and June 2026 have been filed pursuant to the United States Trustee Guidelines.

**C. Issues Raised by Parties in the Bankruptcy Cases**

**1. Burger King**

Prior to the Petition Date, the Debtors each operated their respective sites as a franchisee of Burger King. Due to Ramesh's passing, Burger King alleged that the Debtors were no longer permitted to operate as Burger King franchises. The Debtors, through Ranjana, reached an agreement to continue operating as Burger King locations while the Debtors sought a sale. Those agreements expired in July 2026.

As a result, the Debtors intend to operate as fast food restaurants without being a Burger King franchise, instead operating as Jumbo King Burger locations. This Plan of Reorganization is based on their continued operations under a separate identity.

Burger King may assert that the new restaurants will be in violation of the restrictive covenants in each Debtor's respective franchise agreement, which it alleges contains a one (1) year and two (2) mile restrictive covenant on the Debtors operating a burger restaurant.

In addition, Burger King may allege that the Debtors continued operating as Burger King franchises after the expiration of their agreements, violates Burger King's trademark rights.

**2. Exit 14 Associates, L.P.**

Exit 14 Associates, L.P. has alleged that due to the Debtors' intended operation as new and untested operation, the projections provided with this Disclosure Statement are speculative. As a result, Exit 14 Associates, L.P. may seek additional adequate assurance of future payment in order for JFM Spring to assume the Spring Valley Lease.

**3. Spring Bank**

Spring Bank alleges that the Debtors' Plan is unconfirmable based on various objections raised in its objection to this Disclosure Statement. [ECF 64]. These objections include, but are

not limited to, the following:

1. The treatment of Spring Bank's claim is unclear as to whether the Debtors are asserting it is a secured or unsecured claim and the Plan includes inconsistent statements about the nature of Spring Bank's position. Spring Bank asserts tht it is a secured creditor and the Plan must reat it as such;
2. The Debtors' basis for scheduling Spring Bank's claim as contingent, unliquidated and disputed;
3. Failure to include a liquidation analysis;
4. Failure to include all of the Debtor's related entities and the interaction and flow of funds between and among the Debtors and its related and affiliated entities; and
5. The failure to provide for new value and adequate assurance of protection in the Plan.

Spring Bank further alleges that the financial projections in the Plan are speculative because they are based on the Debtor's past operations as a Burger King franchise and the Debtor intends to operate under a newly created brand. Spring Bank asserts that confirmation should only occur after a reasonable period of the Debtor's operations as a new business.

The Debtors dispute all of these objections. It is the Debtors' position that, per Spring Bank's objection and proof of claim, Spring Bank is an unsecured creditor with respect to each of the Debtors, who only guaranteed the obligations of other entities. The Debtor asserts that, to the extent that Spring Bank has a secured claim, it may be against JFM Spring Properties. The Debtors reserve all objections. If the Debtors and Spring Bank fail to resolve these objections, the Debtors reserve the right to file a motion or adversary proceeding seeking to determine the nature, validity and extent of any secured claim against the Debtors by Spring Bank.

## ARTICLE VI.
## SUMMARY OF THE PLAN OF REORGANIZATION

The following is a summary of the significant elements of the Plan. This Disclosure Statement is qualified in its entirety by reference to the Plan. This summary does not describe every element of the Plan and is not a substitute for a complete review of the Plan. All parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and impact on Creditors and Interest Holders. If there are any inconsistencies between the provisions of this Disclosure Statement and the provisions of the Plan, the provisions of the Plan will control.

### A. What Creditors Will Receive Under the Proposed Plan

The Plan classifies claims in various classes. The Plan states whether each class of claims is impaired or unimpaired. The Plan provides the treatment each class will receive. A copy of the Plan is annexed hereto as **Exhibit A**.

### B. Classification of Claims

As set forth in Articles III and IV of the Plan, the Plan classifies the various Claims against the Debtors and specifies their treatment pursuant to sections 1122 and 1123(a) of the Bankruptcy Code. All Claims, as defined herein and in section 101(5) of the Bankruptcy Code, except the Fee

Claims, Administrative Expense Claims, U.S. Trustee Fees, and Priority Tax Claims, are placed into the Classes set forth below. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, Priority Tax Claims and DIP Claims, as described below, are not classified in the Plan, and the treatment of such Claims is set forth in Article III below. A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, discharged, released or otherwise settled prior to the Effective Date.

### C. Unclassified Claims

The following are the unclassified Claims: Fee Claims, Administrative Expense Claims, U.S. Trustee Fees, Priority Tax Claims, and the DIP Claim. Unclassified Claims are not Impaired by the Plan. Each Holder of an unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

### D. Unimpaired Classes of Claims

Each holder of an Allowed claim in the following class is unimpaired and deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan: Priority Non-Tax Claims.

### E. Impaired Classes of Claims

Each Holder of an Allowed Claim in the following classes is impaired and entitled to vote to accept or reject the Plan:

| Class | Claims & Interest | Status | Voting Rights |
|---|---|---|---|
| **JFM 6090** | | | |
| 1A | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2A | First Franchise Capital Corporation | Impaired | Entitled to Vote |
| 3A | Small Business Administration | Impaired | Entitled to Vote |
| **JFM Sparta** | | | |
| 1B | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2B | First Franchise Capital Corporation | Impaired | Entitled to Vote |
| 3B | Small Business Administration | Impaired | Entitled to Vote |
| **JFM Spring** | | | |
| 1C | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims & Interest | Status | Voting Rights |
|---|---|---|---|
| 2C | First Franchise Capital Corporation | Impaired | Entitled to Vote |
| 3C | Small Business Administration | Impaired | Entitled to Vote |
| **General Unsecured Claims** | | | |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |

## ARTICLE VII.
## TREATMENT OF UNCLASSIFIED CLAIMS

### A. Administrative Expenses Claims

Administrative Expense Claims are Claims for costs or expenses of administering the Debtors' Chapter 11 Case, which are Allowed under Bankruptcy Code section 503(b) or otherwise. The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date, unless a particular Claimant agrees to different treatment. The Debtors or Reorganized Debtors, as appropriate, shall pay each Holder of an Allowed Administrative Expense Claim in full, in Cash, on the later of (i) fifteen (15) days after the Effective Date; or (ii) fifteen (15) days after the date on which such Claim becomes an Allowed Administrative Expense Claim. Notwithstanding anything in the Plan to the contrary, the Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the Holder of an Allowed Administrative Expense Claim and Debtors/Reorganized Debtors. The Debtors estimate that the Administrative Expense Claims total approximately $150,000.

### B. Priority Tax Claims

The Reorganized Debtors shall pay any Allowed Priority Tax Claims, in full, in Cash, without interest, as soon as practicable after the later of (i) fifteen (15) days after the Effective Date, (ii) fifteen (15) days after the date on which such Claim becomes an Allowed Priority Tax Claim, (iii) at the option of the Debtors prior to the Effective Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in Cash, in an aggregate amount of such Allowed Priority Tax Claim payable in regular quarterly installments over a period of not more than five (5) years from the Petition Date, or (iv) such other treatment agreed to by the Debtors and the Holder of such Allowed Priority Tax Claim; *provided, however*, that the Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with any Priority Tax Claim. Any demand for any such penalty will be deemed disallowed by Confirmation of the Plan. The Debtors are still reviewing the Priority Tax Claims.

### C. U.S. Trustee Fees.

All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall pay any and all U.S. Trustee when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall File with the Bankruptcy Court quarterly reports when they become due using UST Form 11-PCR. The Debtors and the Reorganized Debtors shall remain obligated to pay U.S. Trustee Fees to the United States Trustee until the earliest of the

Chapter 11 Case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The United States Trustee shall not be required to File any Administrative Expense Claim in the Chapter 11 Case and shall not be treated as providing any release under this Plan.

The Debtors do not anticipate that there will be any outstanding U.S. Trustee Fees, except those that have not become due in the ordinary course at the time of confirmation.

**D. Fee Claims.**

All Persons seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 45 days after the Effective Date and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which the Order relating to any such Allowed Fee Claim is entered, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or Reorganized Debtors, as applicable. The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after Confirmation in the ordinary course and without the need for Bankruptcy Court approval.

The Debtors estimate the following Fee Claims:

| Name of Professional and Role in Case | Estimated Amount of Fee Claim | Proposed Payment |
|---|---|---|
| Trenk Isabel Siddiqi & Shahdanian P.C.<br><br>*Attorneys for Debtors* | $150,000 | Payment in full on Effective Date or as otherwise agreed upon between the Debtors and the professional. |
| Dorfman Abrham Music Louis Harraka, CPA<br><br>*Financial Advisor for Debtors* | $50,000 | Payment in full on Effective Date or as otherwise agreed upon between the Debtors and the professional. |

## ARTICLE VIII.
## TREATMENT OF CLAIMS

**A. Estimates of Claims**

The amounts listed below represent estimated Allowed Claims, and do not represent amounts actually asserted by creditors in proofs of claim or otherwise. The Debtors have not completed its analysis of Claims in the Chapter 11 Case and objections to such Claims have not been made or fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated. The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Case. The actual amount of the Allowed Claims

may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

**B. Treatment of Class 1A, B, and C (Priority Non-Tax Claims)**

Class 1 consists of the Priority Non-Tax Claims which are defined by the Plan as all Claims that are entitled to priority pursuant to Section 507 of the Bankruptcy Code and that are not General Administrative Expense Claims or Priority Tax Claims. The legal and equitable rights of the Holders of Allowed Priority Non-Tax Claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed Priority Non-Tax Claim and the Debtors shall have agreed in writing to a different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash, without interest, in an amount equal to such Allowed Priority Non-Tax Claim as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date when such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

**C. Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate.

| CLASS | CREDITOR | LIEN | TREATMENT | AMOUNT OWED |
|---|---|---|---|---|
| **JFM 6090** | | | | |
| 2A | First Franchise Capital Corporation | Blanket | Allowed claim of $2 million to be paid over 20 years at 6% with a 5 year balloon<br><br>Monthly Payment: $14,328.62 | $3,259,108 |
| 3A | Small Business Administration | Blanket | Allowed claim of $150,000 to be paid over 20 years at 3.75%<br><br>Monthly Payment: $2,717.33 | $150,000 |
| **JFM Sparta** | | | | |

| CLASS | CREDITOR | LIEN | TREATMENT | AMOUNT OWED |
|---|---|---|---|---|
| 2B | First Franchise Capital Corporation | Blanket | See Treatment in 1A above. | See 1A Above |
| 3B | Small Business Administration | Blanket | See Treatment in 2A above. | $150,000 |
| **JFM Spring** | | | | |
| 2C | First Franchise Capital Corporation | Blanket | See Treatment in 1A above. | See 1A Above |
| 3C | Small Business Administration | Blanket | See Treatment in 2A above. | $150,000 |

**D. Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Debtors do not have any such claims.

**E. Class of General Unsecured Claims**

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtors' general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Allowed general unsecured claims for all Debtors | N | Y | Allowed Class 4 Claims shall be paid their pro rata share of $5,000 per quarter beginning February 1, 2028 for 12 consecutive quarters. No interest will accrue. |

The Debtors estimate that the Class 4 General Unsecured Claims total $500,000, and will receive an estimated dividend of approximately 12% of their claim.

### F. Class of Interests

All equity interests in the Debtors will be extinguished on the Effective Date and equity interests in the Reorganized Debtor shall be issued to Ranjana Jethwa upon payment of $50,000 in new value ("**New Value Contribution**").

### G. Means of Effectuating the Plan

The Plan shall be funded by the Debtors' continuing operating receipts, as set forth in the Debtors' projections. As set forth above, the Debtors intend to cease operating as Burger King franchise locations and reopen as new fast-food restaurants. Therefore, the projections and other financial analysis conducted in connection with this Disclosure Statement are based solely on expected operating revenues from these new restaurants. The restaurants have not started operating at the time of filing this Disclosure Statement, and, therefore, any creditor must conduct its own analysis of the projections and other financial information. There is a risk that the projections may not match the prior operations as a Burger King franchise.

Prior to the Chapter 11 filings, Burger King had terminated the Franchise agreements. Therefore, the Debtors will remove all signage and reference to Burger King. The Debtors estimate that transition expenses shall be approximately $75,000 which will be accomplished before the Effective Date.

### H. Risk Factors

As in any plan of reorganization for corporate restructuring, there are risk factors which may impact the implementation and successful completion of this reorganization. Specifically, the Debtors identify the following risk factors:

1. The Reorganized Debtors intend to operate under a new identity. Therefore, historic financial data may not correlate with the new identity. Based upon the Debtors' experience, they believe that the projections are realistic especially when coupled with various cost savings which will occur from **not** paying future franchisor fees and expenses.

2. As set forth in more detail above, Spring Bank asserts, among other things things, that the Debtor JFM Spring is a subtenant at the property under a Lease held by Spring Properties, which in turn is subject to both a leasehold mortgage and an assignment of leases and rents, and in addition the building on the property is encumbered by a mortgage which is superior to the Lease and sublease. However, the Debtor asserts that significant issues exist with regard to the nature and extent of Spring Bank's lien and this dispute may require resolution by agreement or adjudication.

3. Burger King may assert a certain restrictive covenant or other claims regarding the operation of a hamburger restaurant and use of its trademarks.

# ARTICLE IX.
# PROVISIONS GOVERNING DISTRIBUTIONS

**A. Disbursing Agent.**

The Reorganized Debtors shall be the "**Disbursing Agent**" for all payments to be made under the Plan.

**B. Manner of Payment.**

Any payment of Cash under the Plan may be made either by check drawn or by wire transfer from a domestic bank, at the option of the Disbursing Agent.

**C. Payments and Distributions on Disputed Claims.**

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Disputed Claim Reserve established under Section 8.4 of the Plan. No distribution shall be made on a Claim where only a portion of such Claim is disputed until such dispute is resolved by settlement or Final Order.

**D. Disputed Claim Reserve.**

To the extent that the Disbursing Agent makes a distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the Disbursing Agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such Holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

**E. Transmittal of Distributions to Parties Entitled Thereto.**

All distributions by check shall be deemed made at the time such check is deposited in the United States mail, postage prepaid. Any distributions by wire transfer shall be deemed made as of the date of the wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim in respect thereof or provided in the Plan, any distribution required under the Plan on account of an Allowed Claim, shall be mailed to (i) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution, (ii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Claim to receive distributions, (iii) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records. The Holder of a Claim shall be required to promptly notify the Reorganized Debtors and the Bankruptcy Court of any change in its mailing address.

**F. Distribution of Unclaimed Property.**

Except as otherwise provided in the Plan, any distribution under the Plan which is unclaimed after three (3) months following any Distribution Date shall be forfeited, and such

distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Debtors.

**G. Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day but shall be deemed to have been completed as of the required date.

**H. Setoffs and Recoupment.**

Subject to the terms of the Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtors or Reorganized Debtors, as appropriate, may but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Debtors may have against the Holder of such Claim.

**I. Fractional Cents and *De Minimis* Distributions.**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). Any distribution of less than $10.00 will be considered *de minimis,* and Holders of Allowed Claims that are entitled to an interim or final distribution of less than $10.00 will not receive any distribution. Such funds will remain with and revest in the Reorganized Debtors.

**J. Prepayment.**

Except as otherwise provided herein or the Confirmation Order, the Disbursing Agent shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

**K. Allowance and Disallowance of Claims.**

(a) **Allowance of Claims**. Except as expressly provided in the Plan, no Claims shall be deemed Allowed by virtue of the Plan or the Confirmation Order unless and until such Claim is deemed Allowed under the Bankruptcy Code, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim. Notwithstanding the foregoing, any Claim included in the Debtors' Schedules that is not listed as contingent, unliquidated, and/or disputed shall be an Allowed Claim. Any Proof of Claim Filed in an unliquidated amount shall be deemed Allowed in the amount listed in the Debtors' Schedules as liquidated, not contingent and not disputed. The Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code.

(b) **Disallowance of Claims**. Except as expressly provided in the Plan, all Claims held by Persons against whom the Debtors or Reorganized Debtors, as appropriate, have filed or commenced or may in the future file or commence a Claim under sections 542, 543, 544, 547, 548,

549, 550, 551, 553 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code. The Holders of any and all Claims filed with the Bankruptcy Court after the Bar Date shall be deemed disallowed without further action by the Debtors or Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court. The Holders of any and all Claims Filed with the Bankruptcy Court after the relevant Bar Date shall not be entitled to a distribution, unless otherwise allowed by Final Order of the Bankruptcy Court.

**L. Resolution of Disputed Administrative Expense Claims and Disputed Claims.**

(a) **Prosecution of Objections to Claims.** Except as otherwise set forth herein, prior to the Effective Date, the Debtors shall have standing and the right to commence and pursue objections to Claims, and the Reorganized Debtors shall have such standing after the Effective Date. All objections to Claims shall be Filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made. The Debtors reserves the right to seek an extension of such date in accordance with D.N.J. LBR 3007-1(c).

(b) **Objections to Claims**. An objection to the allowance of a Claim shall be in writing and shall be Filed with the Bankruptcy Court by the Debtors or Reorganized Debtors, as applicable. Except as expressly set forth herein, nothing herein, in the Confirmation Order or in any Order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, including any Avoidance Action, right of setoff or recoupment or other legal or equitable defense which the Debtors had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim. Except as set forth herein, upon Confirmation, the Debtors or Reorganized Debtors shall have, retain, reserve and be entitled to assert all such Claims, rights of setoff and recoupment and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Chapter 11 Case against or with respect to any Claim.

**M. Controversy Concerning Impairment.**

If a controversy arises as to whether any Claims or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before approving the Disclosure Statement.

## ARTICLE X.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Executory Contracts and Unexpired Leases.**

On the Effective Date, all Executory Contracts and unexpired leases not rejected on or before Confirmation will be deemed assumed. The Confirmation Order shall constitute an order approving such assumption as of the Effective Date. No cure payments or adequate assurance of future performance shall be due.

**B. Bar to Rejection Damages.**

All Proofs of Claim for Claims arising from a rejection of an Executory Contract or unexpired leases must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection; (ii) the date set forth in D.N.J. LBR 3003-1(b) or (ii) thirty (30) days after Confirmation. Any Proofs of Claim that are not filed timely shall be barred forever from assertion.

## ARTICLE XI.
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**A. Conditions Precedent to the Effective Date.**

The Effective Date shall not occur, and the Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors;

(b) the Confirmation Order shall be a Final Order and no stay of the Confirmation Order shall then be in effect;

(c) the Plan has not been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Debtors.

**B. Notice of Effective Date.**

The Debtors shall file and serve on all Holders of Claims a Notice of Effective Date with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

**C. Waiver of Conditions Precedent to the Effective Date.**

Each of the conditions precedent to the occurrence of the Effective Date may only be waived in whole or in part by the Plan Proponent without notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

**A. Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Plan Proponent. The Plan Proponent shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

### B. Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every Holder of a Claim shall be precluded and permanently enjoined from asserting against the Debtors and/or Reorganized Debtors any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

### C. Discharge of the Debtors.

(a) Except as provided in the Plan or the Confirmation Order, upon the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.

(b) Except as provided in the Plan or the Confirmation Order, upon the Effective Date, all Persons shall be precluded from asserting against the Debtors, the Reorganized Debtors and their respective members, shareholders, officers, directors, partners, attorneys or advisors, any other or further Claims relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all Claims against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

### D. Release and Discharge of Committee.

Effective on the Effective Date, any committee of creditors appointed by the Office of the United States Trustee, if any, shall be disbanded and it and its professionals released from their duties and obligations.

## ARTICLE XIII.
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

### A. General Injunction.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE CONFIRMATION ORDER WILL PROVIDE THAT ALL PERSONS AND ENTITIES WHO HELD, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTORS ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION, FROM (A) COMMENCING OR**

**CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM PROCEDURES DISCUSSED IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS ON ACCOUNT OF ANY SUCH CLAIM TO THE EXTENT PROVIDED IN 11 U.S.C. § 1141.**

**B. Release by Debtors.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THEIR ESTATE AND ANY PERSON SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS OR THEIR ESTATE AND THEIR PROPERTY (AND EACH SUCH RELEASED PARTY SHALL BE DEEMED RELEASED BY THE DEBTORS AND THEIR ESTATE AND THEIR RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS RELATING TO THE DEBTORS, THEIR ESTATE OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATE OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED* THAT, TO THE EXTENT THAT A CLAIM IS DETERMINED BY A FINAL ORDER TO HAVE RESULTED FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT OF A RELEASED PARTY, SUCH CLAIM SHALL NOT BE SO RELEASED AGAINST SUCH RELEASED PARTY; *PROVIDED FURTHER* THAT, THE FOREGOING "DEBTORS RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OF THE DEBTORS OR ITS CHAPTER 11 ESTATE AGAINST A RELEASED PARTY (OR OF A RELEASED PARTY AGAINST THE DEBTORS AND THEIR**

**CHAPTER 11 ESTATE) ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN.**

**C. Exculpation.**

**FROM THE PETTITON DATE TO THE EFFECTIVE DATE , NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM TO ANY OTHER EXCULPATED PARTY, TO ANY HOLDER OF A CLAIM, OR TO ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION THAT OCCURRED DURING AND IN CONNECTION WITH THIS CHAPTER 11 CASE OR IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THE PLAN, AND THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A BANKRUPTCY COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN.**

**D. Vesting of Assets in Reorganized Debtors.**

Except as otherwise provided in the Plan, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtors pursuant to the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens expressly preserved and continued under the Plan). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting any of the foregoing, the Reorganized Debtors may pay the charges incurred on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**E. Causes of Action.**

Except as set forth otherwise herein, the Reorganized Debtors, on behalf of and for the benefit of the Debtors' estate, shall be vested with and shall retain and may enforce any and all Claims of any kind or nature whatsoever held by, through or on behalf of the Debtors and/or its Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date whether or not such Claims and Interests are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Until such time as a Final Decree is entered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant to the provisions of chapter 11 of the Bankruptcy Code to make such orders as are necessary or appropriate to carry out the provisions of the Plan, and with respect to the following matters:

(a) To enable the Plan Proponent to consummate the Plan and to resolve any disputes arising therefrom;

(b) To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c) To determine the classification, estimation and priority of all claims against the Debtors and to re-examine any Claims which may have been allowed;

(d) To determine applications for the rejection or assumption of Executory Contracts or unexpired leases pursuant to the provisions of the Plan which are not determined prior to Confirmation and to determine allowance of Claims for damages with respect to rejection of any such Executory Contracts or unexpired leases within such time as the Bankruptcy Court may direct;

(e) To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by the Plan;

(f) To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(g) To hear and determine all applications for compensation and other Administrative Expense Claims;

(h) To hear and determine any and all pending adversary proceedings or contested matters and all claims or causes of action related thereto or arising therefrom, whether or not presently asserted in the operative complaint therein;

(i) To hear and determine any and all Claims and causes of action that belong to the Debtors or its Estate on or prior to the Effective Date, including but not limited to, such Claims and causes of action that vest in the Reorganized Debtor on the Effective Date pursuant to the Plan, whether or not asserted prior to the occurrence of the Effective Date, including but not limited to, all Claims and causes of action presently asserted in, or that could be asserted in, the Insurance Coverage Adversary Proceeding;

(j) To determine all causes of action which may exist in favor of the Debtors or the Trust;

(k) To determine any modification of the Plan after confirmation pursuant to section 1127 of the Bankruptcy Code;

(l) To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtors under the Plan;

(m) To enter the Final Decree pursuant to Rule 3022 of the Bankruptcy Rules;

(n) To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o) To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the Chapter 11 Case entered on or before Confirmation;

(p) To hear and determine any and all objections to payments to be made under the Plan;

(q) To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(r) To adjudicate all Claims to a security or ownership interest in any property of the Debtors or in any proceeds thereof;

(s) To adjudicate all causes of action to recover all assets and properties of the Debtors wherever located;

(t) To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(u) Over matters related to the assets of the Estate or the recovery, liquidation, or abandonment;

(v) Over conflicts and disputes among the Reorganized Debtors and holders of Claims; and

(w) To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, or enforcing the provisions thereof.

In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Plan Proponent, or its successors, elects to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of

jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS OF THE PLAN

### A. Amendment or Modification of the Plan.

On or before the Effective Date, the Plan or any exhibits hereto may be amended, modified, or supplemented by the Plan Proponent in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after Confirmation, the Reorganized Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. The Plan Proponent may make appropriate technical adjustments and modifications to the Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

### B. Revocation or Withdrawal of the Plan.

The Plan Proponent reserves the right to revoke or withdraw the Plan before Confirmation. If the Plan Proponent revokes or withdraws the Plan before Confirmation, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or to prejudice in any manner the rights of the Plan Proponent in any further proceedings.

### C. Reports.

Until a Final Decree is entered, the Debtors or the Reorganized Debtors, as the case may be, shall submit all post-Confirmation quarterly reports to the U.S. Trustee as required by the U.S. Trustee guidelines (with a copy served on the Office of the U.S. Trustee) setting forth all receipts and disbursements of the Debtors. The first report shall be filed within thirty (30) days after the end of the quarter in which the Effective Date occurs. The Reorganized Debtors shall be responsible to request that a Final Decree be entered in this Chapter 11 Case. The Reorganized Debtors shall also be responsible for any quarterly fees due to the U.S. Trustee from and after the Effective Date until the Chapter 11 Case is closed.

### D. Severability of Plan Provisions.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and

provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**E. No Interest.**

Except as expressly stated in the Plan, no interest, penalty or late charge is allowed or shall be paid on any Claim.

**F. Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

**G. Notices.**

Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by: (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

**IF TO THE DEBTORS:**

TRENK ISABEL SIDDIQI &
SHAHDANIAN P.C.
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
Stephen M. Gengaro, Esq.
290 Mt. Pleasant Avenue, Suite 2370
Livingston, New Jersey 07037
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law
Email: sgengaro@trenkisabel.law

**H. Controlling Documents.**

Notwithstanding anything to the contrary contained herein or in the Disclosure Statement, in the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**I. Filing of Additional Documents.**

Prior to the Effective Date, the Plan Proponent may File with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of the Plan that are not inconsistent with the terms of the Plan. On or after the Effective Date, the Reorganized Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate the terms and conditions of the Plan.

**J. Reservation of Rights.**

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of the Debtors and all parties in interest in the Bankruptcy Case shall and will be reserved in full. Statements and provisions made in the Plan or in the Disclosure Statement are made only for the purpose(s) of the Plan. If the Plan is withdrawn, the Confirmation Order is not entered, or if the Effective Date does not occur, no Person shall be bound by or deemed prejudiced by any such statement or provision.

**K. Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**L. Successors and Assigns.**

The rights, duties and obligations of any Person named or referred to in the Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

**M. Waiver of Subordination.**

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the distributions made pursuant to the Plan and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving distributions under the Plan.

**N. Post-Effective Date Professional Fees.**

The reasonable fees and actual and necessary expenses incurred after the Effective Date by professionals for the Reorganized Debtors shall be paid by the Reorganized Debtors upon the submission of an invoice to the Reorganized Debtors without the need for further notice to any Person or approval by the Bankruptcy Court.

**O. Governing Law.**

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (b) governance matters shall be governed by the laws of the State of New Jersey, without giving effect to the principles of conflict of law thereof.

**P. Headings.**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**Q. No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

## ARTICLE XVI.
## RISK FACTORS/TAX CONSEQUENCES

**HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR INCORPORATED BY REFERENCE, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTORS' ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE MATERIALLY DIFFERENT FROM THOSE THEY MAY PROJECT, AND THE DEBTORS UNDERTAKES NO OBLIGATION TO UPDATE ANY SUCH STATEMENT.**

**A. Tax Consequences of Plan**

**CIRCULAR 230 DISCLAIMER**

**To ensure compliance with requirements imposed by the Internal Revenue Service (the "IRS"), the Debtors inform all creditors that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s) addressed herein.**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues the Plan may present to Debtors. The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Confirmation may have federal income tax consequences for the Debtors and Holders of

Claims. The Plan Proponent has not obtained and do not intend to request a ruling from the Internal Revenue Service, nor has the Plan Proponent obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each Holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

**B. Bankruptcy Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Debtors believe that the Plan is viable and will meet all requirements of confirmation.

**a. Risk of Non-Confirmation of the Plan**

Although the Plan Proponent believes that the Plan satisfies all legal requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. There can also be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate a solicitation of votes to accept or reject the Plan. If the Plan is not confirmed and consummated, there can be no assurance that the Chapter 11 Case will continue rather than be dismissed. The Bankruptcy Court, which sits as a court of equity, may exercise substantial discretion with respect to the affairs of the Debtors during the Chapter 11 Case. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and requires, among other things, that the value of distributions to dissenting creditors not be less than the value of distributions such creditors and shareholders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Although the Plan Proponent believes that the Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The Debtors could experience material adverse changes in its liquidity as a result of such delay and increased administrative fees and expenses.

**b. The Debtors May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Plan Proponent reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive their expected share of the estimated distributions described in this Disclosure Statement.

**c. Risk of Additional or Larger Claims**

The Disclosure Statement and its attached exhibits necessarily include estimates, including

estimates of future events. These estimates include, but are not limited to, estimates of future income and expenses, estimates as to the total amount of Claims that will be asserted against the Debtors and the outcome of Disputed Claims. The Plan Proponent believes that the estimates presented are reasonable and appropriate under the circumstances. Nevertheless, there is a risk that unforeseen future events may cause one or more of these estimates to be materially inaccurate. Among the potential risks is that additional Administrative Expense Claims may be asserted, that Disputed Claims may be resolved at higher amounts than expected or that the resolution of such Claims may require the expenditure of unanticipated professional fees. If one or more of these estimates proves to be inaccurate, the amount of funds available for Distribution pursuant to the Plan may be reduced.

**d. Other Parties in Interest Might be Permitted to Propose Alternative Plans of Reorganization**

Under the Bankruptcy Code, a Debtors in possession initially has the exclusive right to propose and solicit acceptances of a plan of reorganization. However, such exclusivity period can be reduced or terminated upon order of the Bankruptcy Court, or it may expire under the applicable provisions of the Bankruptcy Code. If such an order were to be entered or such expiration were to occur, other parties in interest would then have the opportunity to propose alternative plans of reorganization.

If other parties in interest were to propose an alternative plan of reorganization following expiration or termination of the Debtors' exclusivity period, such a plan may be less favorable to the Debtors, its Estate, and its stakeholders. In addition, if there were competing plans of reorganization, the Chapter 11 Cases would likely become longer, more complicated, and more expensive, thereby reducing recoveries to holders of Claims.

**e. Non-Consensual Confirmation**

If any Impaired Class of Claims does not accept or is deemed not to accept a plan of reorganization, a Bankruptcy Court may nevertheless confirm such plan at the proponent's request if at least one Impaired Class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If any Class votes to reject or is deemed to reject the Plan, then these requirements must be satisfied with respect to such rejecting Class. The Debtors believe that the Plan satisfies these requirements.

**f. Parties in Interest May Object to the Debtors' Classification of Claims**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. Parties in interest may object to the classification of certain claims and interests both on the grounds that certain claims and interests have been improperly placed in the same Class and/or that certain claims have been improperly placed in different Classes. The Plan Proponent believes that the classification of Claims under the Plan complies with the requirements of the Bankruptcy Code because the Classes established under the Plan each encompass Claims

that are substantially similar to similarly classified Claims. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Parties in interest may object to the classification of certain Claims both on grounds that certain Claims have been improperly placed in the same Class and/or that certain Claims and Interests have been improperly placed in different Classes.

### g. The Recovery to Holders of Allowed Claims

Due to the inherent uncertainties associated with projecting financial results, the projections contained in this Disclosure Statement should not be considered assurances or guarantees of the amount of Claims that may be allowed in the various Classes. While the Debtors believe that the projections and estimates contained in this Disclosure Statement are reasonable, to the extent that Claims are allowed at numbers or amounts that are higher than the total projected number or valuation ranges for each Class, distributions/recoveries to holders of Claims may be lower, and there can be no assurance that the distributions/recoveries set forth in the projections in the Disclosure Statement will be realized. Also, because the Liquidation Analysis, distribution projections, and other information contained herein and attached hereto are estimates only, the timing and amount of actual distributions to holders of Allowed Claims, if applicable, may be affected by many factors that cannot be predicted.

### h. Amendment of Plan Prior to Confirmation by the Debtors

The Plan Proponent, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan or waive any conditions thereto if and to the extent necessary or desirable for confirmation. The potential impact of any such amendment or waiver on holders of Claims cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

### i. Financial Projections

The Debtors have prepared financial projections based on certain assumptions, as set forth herein. The projections have not been compiled, audited, or examined by independent accountants, and neither the Debtors nor its advisors make any representations or warranties regarding the accuracy of the projections or the ability to achieve forecasted results.

Many of the assumptions underlying the projections are subject to significant uncertainties that are beyond the control of the Debtors, including the timing, Confirmation, and consummation of the Plan. Some assumptions may not materialize, and unanticipated events and circumstances may affect the actual results. Projections are inherently subject to substantial and numerous uncertainties and to a wide variety of significant economic, and operational risks, and the assumptions underlying the projections may be inaccurate in material respects. In addition, unanticipated events and circumstances occurring after the approval of this Disclosure Statement by the Bankruptcy Court including any natural disasters, terrorist attacks, or health epidemics may affect the actual financial results achieved. Such results may vary significantly from the forecasts and such variations may be material. The Debtors' projections reflect expectations of continued donor support. However, the Debtors cannot state with certainty that such donation programs will

achieve their targeted results.

**j. Voting Requirements**

If sufficient votes are not received, the Plan Proponent may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

**k. Time Risk**

There is a material risk that failure to emerge from the Chapter 11 Case in a timely manner could endanger the future of the Debtor. In order to rebuild trust of its vendors and customers, the Debtors must emerge from the cloud of this Chapter 11 Case. If the support of the vendors and customers is substantially reduced from projections, the Debtors could lack the means to meet their operational needs or otherwise emerge from bankruptcy. Timely emergence from Chapter 11 is essential to the Debtors' ability to maintain its operations and mission.

Substantial professional fees will continue to accrue until a plan is confirmed and becomes effective. At this time, the Debtors' bankruptcy estate bears the burden for the fees of the professionals and advisors to the Debtors. In addition, the Debtors are required to pay the fees of its lender, East West Bank. The length of the case also requires continued fees for the United States Trustee. Such fees are substantial.

**l. Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code**

The Debtors may need to satisfy the "best interests of creditors" test, embodied in section 1129(a)(7) of the Bankruptcy Code. The Debtors will be prepared at confirmation to address those standards, including through the Liquidation Analysis, which shows that the Debtors satisfy the test, and/or through other expert testimony related to whether holders of Impaired Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive in a liquidation under chapter 7. If the Bankruptcy Court determines that the Plan does not satisfy the requirements of the best interests test, to the extent it applies, the Plan may not be Confirmed or may only be Confirmed with modifications, including potential modifications to the nonconsensual third party releases included in the Plan. If the Plan cannot be Confirmed because of this issue, the Debtors' options going forward may be limited to: (1) reaching agreement on a fully consensual plan; (2) satisfying the best interest of creditors test; and (3) voluntary or involuntary dismissal.

**m. Historical Financial Information of the Debtors**

As a result of the consummation of the Plan and the transactions contemplated thereby, the financial condition and results of operations of the Reorganized Debtors from and after the Effective Date may not be comparable to the financial condition or results of operations reflected in the Debtors' historical financial statements.

### C. Other Factors

#### a. Plan Proponent Could Withdraw the Plan

Subject to, and without prejudice to, the rights of any party in interest, the Plan may be revoked or withdrawn before Confirmation by the Plan Proponent.

#### b. Plan Proponent Has No Duty to Update

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. Additionally, the Plan Proponent has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

#### c. No Representations Outside this Disclosure Statement Are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

#### d. No Legal or Tax Advice Is Provided by this Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim should consult its own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest. This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

#### e. No Admission Made

Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or holders of Claims or Interests.

## ARTICLE XVII.
## FEASIBILITY OF THE PLAN

As a condition to Confirmation, section 1129(a)(11) of the Bankruptcy Code involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Debtors or any successor to Debtors under the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Debtors maintain that this aspect

of feasibility is satisfied as illustrated here, based upon the value of the Debtors' assets.

The second aspect considers whether the Debtors will have enough cash over the life of the Plan to make the required Plan payments. The Debtors believe that this second aspect of the feasibility requirement is met based on the work in progress and historical performance. A copy of the Debtors' projections is annexed hereto as **Exhibit B**. Accordingly, the Debtors believe, on the basis of the foregoing, that the Plan is feasible.

ALTHOUGH EVERY EFFORT WAS MADE TO BE ACCURATE, THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TOWARD COMPLIANCE WITH THE GUIDELINES ESTABLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTS OR IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS IN THE UNITED STATES, THE FINANCIAL ACCOUNTING STANDARDS BOARD, OR THE RULES AND REGULATIONS OF THE SECURITIES AND EXCHANGE COMMISSION REGARDING PROJECTIONS. FURTHERMORE, NEITHER THE DEBTORS' ACCOUNTANTS, NOR ANY OTHER ACCOUNTANTS, HAVE COMPILED, EXAMINED, OR PERFORMED ANY PROCEDURES WITH RESPECT TO THE PROJECTIONS CONTAINED HEREIN, NOR HAVE THEY EXPRESSED ANY OPINION OR ANY OTHER FORM OF ASSURANCE ON SUCH INFORMATION OR ITS ACHIEVABILITY, AND ASSUME NO RESPONSIBILITY FOR, AND DISCLAIM ANY ASSOCIATION WITH, THE PROSPECTIVE FINANCIAL INFORMATION. WHILE PRESENTED WITH NUMERICAL SPECIFICITY, THE PROJECTIONS ARE BASED ON A VARIETY OF ASSUMPTIONS, WHICH MAY NOT BE REALIZED, AND ARE SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, WHICH ARE BEYOND THE CONTROL OF THE DEBTORS. CONSEQUENTLY, THE PROJECTIONS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS, OR ANY OTHER PERSON, THAT THE PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY VARY MATERIALLY FROM THOSE PRESENTED IN THE PROJECTIONS. HOLDERS OF CLAIMS MUST MAKE THEIR OWN DETERMINATION AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS IN REACHING THEIR DETERMINATIONS OF WHETHER TO ACCEPT OR REJECT THE PLAN. THE DEBTORS' FINANCIAL ADVISORS HAVE NOT EXPRESSED AN OPINION ON OR MADE A REPRESENTATION REGARDING THE ACHIEVABILITY OF THE FINANCIAL PROJECTIONS.

## ARTICLE XXVIII.
## BEST INTERESTS TEST

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant is in an impaired class and that claimant does not vote to accept the Plan, then that claimant must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtors' assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a

lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims.

In order for the Bankruptcy Court to be able to confirm the Plan, the Bankruptcy Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtors maintain that this requirement is met here for the following reasons:

**TRENK ISABEL SIDDIQI**
**& SHAHDANIAN P.C.**
*Counsel for Debtors and Debtors-in-Possession,*

By: *__/s/ Richard D. Trenk__*
RICHARD D. TRENK

**J.F.M. 6090 LLC**
**JFM SPIRNG LLC**
**JFM SPARTA LLC**
*Debtors and Debtors-in Possession*

By __/s/ Ranjana Jethwa__
RANJANA JETHWA

Dated: July 20, 2026