**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**VENABLE LLP**
151 W. 42nd Street, 49th Floor
New York, NY 10036
Tel.: (212) 307-5500
Fax: (212) 307-5598
Attn: Michael A. Guerra
(MAGuerra@Venable.com)

- and -

801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Tel.: (305) 349-2300
Attn: Glenn D. Moses (*pro hac vice*)
(GMoses@Venable.com)

*Counsel to Creditor Burger King Company LLC*

**In re:**
**J.F.M. 6090, INC., *et al.*,**[1]

**Debtors.**

Case No.: 26-15123-JKS
(Jointly Administered)
Chapter: 11
Hon. John K. Sherwood

Hearing Date: August 25, 2026,
10:00 a.m.

# MEMORANDUM OF LAW IN SUPPORT OF BURGER KING COMPANY LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY TO SEEK INJUNCTIVE RELIEF

Burger King Company LLC ("BKC") files this Memorandum of Law in support of its Motion pursuant to 11 U.S.C. § 362(d) for an order granting relief from the automatic stay to allow it to pursue injunctive relief to prohibit the Debtors from their continued trademark infringement, violations of federal law, and violations of enforceable restrictive covenants. This Motion is

[1] The Debtors in these chapter 11 cases are J.F.M. 6090, Inc. [Case No. 26-15123], JFM Spring LLC [Case No. 26-15124], and JFM Sparta, LLC [Case No. 26-15275].

supported by the Declaration of Dylan Mencia (the "Mencia Declaration"), filed concurrently herewith and the exhibits attached thereto. In connection therewith, BKC states as follows.

## PRELIMINARY STATEMENT

As of early July, the Debtors are no longer franchisees in the Burger King® system. All franchise agreements between BKC and the Debtors have been terminated. Notwithstanding this, the Debtors continue to fully operate as Burger King® restaurants at their Sparta and Spring Valley locations and are blatantly violating BKC's trademark and intellectual property rights pursuant to federal law, causing immediate and irreparable harm to BKC's brand. The Debtors agreed in writing that BKC is entitled to injunctive relief for such conduct.

At the Paterson location, the Debtors are causing further customer confusion, and immediate and irreparable harm to BKC, by operating a "Jumbo King Burger" operation in violation of restrictive covenants barring the Debtors from operating any non-Burger King® hamburger business at or within two miles of the restaurant locations for one year.

"Cause" exists under § 362(d)(1) to allow BKC to pursue injunctive and declaratory relief to stop the unauthorized use of its marks and the violation of the restrictive covenants in the Franchise Agreements. The restrictive covenants are fully enforceable against the Debtors[2], and no form of adequate protection can remedy the ongoing harm caused by the continuing misappropriation of BKC's intellectual property rights.

## RELEVANT BACKGROUND

1. On May 5, 2026, each of J.F.M. 6090, Inc. ("JFM 6090") and JFM Spring LLC ("JFM Spring") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The

---

[2] BKC incorporates its arguments contained in the Memorandum of Law in Support of Motion to Convert Cases to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) [ECF No. 84] as to why the Restrictive Covenants are enforceable against Debtors in bankruptcy and why BKC is entitled to injunctive relief. *Id*. at pp. 5-8, 10-12.

following week, on May 11, 2026, JFM Sparta, LLC ("JFM Sparta") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered.

2. BKC is engaged in the business of operating and granting franchisees the right to operate Burger King® restaurants using the Burger King® marks (the "Burger King® Marks") and system, including the uniform and comprehensive restaurant format and operating system containing a standardized design, decor, equipment system, color scheme, style of building and signage, as well as uniform operating and quality standards, specifications and procedures of operation, and uniformity of products and services offered, including all provisions of the Manual of Operating Data, as amended from time to time (collectively, the "Burger King® System").

3. Prior to July 2026, each of the Debtors was a franchisee within the Burger King® System pursuant to separate franchise agreements (the "Franchise Agreements"). True copies of the Franchise Agreements are attached to the Mencia Declaration as Exhibits A through C.

4. In connection therewith, JFM 6090 was approved to operate a Burger King® restaurant at 12-14 Spruce Street, Paterson, New Jersey (the "Paterson Restaurant"); JFM Sparta was approved to operate a Burger King® restaurant at 49 Sparta Avenue, Sparta, New Jersey (the "Sparta Restaurant"); and JFM Spring was approved to operate a Burger King® restaurant at 160 Spring Valley Marketplace, Spring Valley, New York (the "Spring Valley Restaurant") (collectively, the "Restaurants").

**Termination of the Debtors' Rights to Operate Burger King® Franchises**

5. Pursuant to the terms of a Settlement Agreement dated July 31, 2023 between BKC, the Debtors, and the Debtors' president and owner Ranjana Jethwa (the "Settlement Agreement"), the Franchise Agreements were terminated and the Debtors were permitted to continue operating the Restaurants only pursuant to a limited license granted under the Settlement Agreement (the

"Limited License"). Pursuant to BKC's notice of default dated April 2, 2026 (*see* Mencia Declaration, Exhibits D and E), all of the Debtors' rights under the Franchise Agreements and the Limited License were to be terminated effective as of June 1, 2026.

6. Due to the bankruptcy filings of JFM 6090 and JFM Spring on May 5, 2026 and the bankruptcy filing of JFM Sparta on May 11, 2026 prior to termination, and by operation of section 108(b) of the Bankruptcy Code, the rights of JFM 6090 and JFM Spring to operate as Burger King® franchisees expired on July 4, 2026, and the right of JFM Sparta to operate as a Burger King® franchisee expired on July 10, 2026.

7. As of the date hereof, and despite the termination of the Franchise Agreements and the expiration of the Limited License, the Debtors continue to operate the Restaurants as Burger King® restaurants without any authorization from BKC.

**The Restrictive Covenants**

8. Each of the Franchise Agreements contains restrictive covenants (the "Restrictive Covenants") barring the Debtors, for one year after termination, from owning or operating any non-Burger King® hamburger business at or within two miles of their respective Restaurants. Paragraph 19 of each Franchise Agreement provides:

> Franchisee covenants and agrees for itself, its parent, subsidiaries and affiliated companies that during the Term of this Agreement they will not own, operate or have any interest in any hamburger business except other franchised BURGER KING Restaurants. Franchisee further covenants and agrees that for a period of one (1) year after any sale, assignment, transfer, termination or expiration of this Agreement, these entities will not own, operate or have any interest in any hamburger business, except other franchised BURGER KING Restaurants, either at or within two (2) miles of the Premises.

*See* Mencia Declaration, Exhibits A through C, ¶ 19.

**The Debtors' Plan and Disclosure Statement**

9. On July 20, 2026, the Debtors filed their Second Amended Plan of Reorganization (the "Plan") [ECF No. 72] and Second Amended Disclosure Statement describing the Plan (the "Disclosure Statement") [ECF No. 71]. The Plan is premised on the Debtors' ability to operate a hamburger business at each of the Restaurants in direct violation of the Restrictive Covenants. The Debtors brazenly call their new concept a "Jumbo King Burger" restaurant operation.[3] *See* Disclosure Statement, p. 13.

10. On July 21, 2026, this Court entered an *Amended Order Conditionally Approving Second Amended Disclosure Statement* [ECF No. 75] which conditionally approved the Disclosure Statement and set August 25, 2026 at 10:00 a.m. as the date for final approval of the Disclosure Statement and confirmation of the Plan. BKC has separately objected to confirmation of the Plan on the basis that it is patently unconfirmable [ECF No. 83] and has moved to convert Debtors' cases to cases under chapter 7 [ECF No. 84].

**The Debtors' Continued Unauthorized Operations and Brand Confusion**

11. Despite the termination of the Franchise Agreements, the Debtors continue to operate their premises as Burger King® restaurants, displaying Burger King® signage, trade dress, branding, menus, uniforms and other indicia of a Burger King® franchise.

12. On July 31, 2026, BKC notified the Debtors that their continued unauthorized use of the Burger King® trademarks constitutes, among other things, willful trademark infringement under the Lanham Act, a blatant violation of violation of the post-termination covenants of the

[3] As set forth herein, BKC has challenged the application filed with the U.S. Patent and Trademark Office for the mark "JUMBO KING BURGER" on the basis that it is confusingly similar to the Burger King® Marks in violation of Section 2(d) of the Trademark Act.

Franchise Agreements, and irreparable harm to the goodwill and reputation of the Burger King® brand as well as trademark dilution. As such, BKC demanded the Debtors to (a) immediately cease and desist from identifying as a Burger King® restaurant and the use of the Burger King® Marks and intellectual property in any form, (b) deidentify the premises by removing all Burger King® signage, and (b) comply fully with all post termination covenants of the franchise agreements. *See* cease and desist notification attached hereto as Exhibit "A".

13. Notwithstanding the foregoing, the Debtors continue to operate as Burger King® restaurants at the Sparta Restaurant and the Spring Valley Restaurant. *See* Mencia Declaration, ¶¶ 13–15 including recent photographs.

14. At the Paterson Restaurant, the Debtors commenced operations of a "Jumbo King Burger" hamburger restaurant in violation of the Restrictive Covenants. This predictably is causing actual, documented confusion among consumers.

15. On August 10, 2026, a TikTok video filmed outside of the Paterson Restaurant was posted and has been viewed more than 75,000 times. In the video, the customer cannot determine whether the "Jumbo King Burger" operation is affiliated with or authorized by BKC. The video is available at: https://www.tiktok.com/t/ZTAoqLHLF/. Other TikTok videos, one of which was shared over 3,500 times, demonstrates the brand confusion caused by the Debtors' blatant infringement on BKC's intellection property rights and in open violation of the Restrictive Covenants. Those TikTok videos are also available at: https://www.tiktok.com/t/ZP8nWb7yV; https://www.tiktok.com/t/ZP8nWcBpW; and https://www.tiktok.com/t/ZP8nWthJw. *See* Mencia Declaration, ¶ 17.

16. The Debtors' public-facing website, jumbokingburgers.com, compounds it: the "Jumbo King Burger" name appropriates two of the three words of BKC's iconic mark, and the

site adopts a color scheme, logo treatment, typography, and overall look and feel that closely resemble BKC's trade dress, all while listing the very addresses at which the Debtors operated as authorized Burger King® franchisees for years. *See* https://jumbokingburgers.com/contact. The Debtors' website for the Paterson Restaurant further compounds the consumer confusion by marketing and selling items that are identical to BKC products including the "Whopper"®. This conduct creates a serious risk of harm to consumers and to the goodwill associated with the Burger King® brand. *See* Mencia Declaration, ¶ 18.

17. In Section V.E of the Settlement Agreement, the Debtors expressly acknowledged that monetary damages would be inadequate to remedy the harm caused by operating a Restaurant after termination without BKC's written authorization, and that BKC is entitled to injunctive relief. *See* Mencia Declaration, ¶ 11.

**The Debtors' Attempt to Register a Confusingly Similar Mark**

18. Moreover, in addition to violating the Restrictive Covenants, the Debtors are not merely continuing to operate as Burger King® restaurants; they are actively seeking to trade on BKC's goodwill under a confusingly similar name. On June 8, 2026, the Debtors' principal filed U.S. Trademark Application Serial No. 99871702 in her individual capacity with the United States Patent and Trademark Office for the mark "JUMBO KING BURGER" for "fast food restaurant services; restaurant services; restaurant services in the nature of a fast food burger restaurant." On July 29, 2026, BKC filed a Letter of Protest with the USPTO challenging the application on the basis that "JUMBO KING BURGER" is confusingly similar to BKC's senior BURGER KING® Marks in violation of Section 2(d) of the Trademark Act. *See* Mencia Declaration, Exhibit F.

## LEGAL ARGUMENT

**Relief from the Automatic Stay Is Warranted Under 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2)**

### A. *Cause Exists for Stay Relief Under 11 U.S.C. § 362(d)(1)*

19. Section 362(d)(1) provides that the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest". 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code, leaving courts to determine whether cause exists by looking to the totality of the circumstances on a case-by-case basis. *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (cause determined on a case-by-case basis by totality of circumstances).

20. There is no question that "cause" exists to allow BKC to seek injunctive relief as to the Debtors' continued operation of Burger King® restaurants at Sparta and Spring Valley, as well as to seek injunctive relief to enforce the Restrictive Covenants.

21. Injunctive relief is necessary to stop the ongoing and irreparable harm being visited upon BKC by the Debtors' unauthorized use of the Burker King® Marks at the Sparta and the Spring Valley Restaurants. Where a former franchisee continues to operate under the franchisor's marks, the franchisor loses all ability to control the quality of the goods and services sold under its name. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 803–05 (3d Cir. 1998) (terminated franchisees' continued use of the franchisor's marks and franchisor's loss of control over its reputation and goodwill constitutes irreparable injury). Congress has since codified a rebuttable presumption of irreparable harm upon a showing of infringement. 15 U.S.C. § 1116(a); *see also Pappan Enters.*, 143 F.3d at 804 (noting the Third Circuit has held that "where the identical mark is used concurrently by unrelated entities, the likelihood of confusion is inevitable."). The harm is especially acute here: the Debtors possess the full complement of BKC's trade dress, signage, menu boards, uniforms, and operating know-how, and can replicate the experience of an authorized Burger King® restaurant.

22. BKC should also be authorized to seek injunctive relief to enforce the Restrictive Covenants including as it relates to the Paterson Restaurant. As set forth in BKC's Motion to Convert [ECF No. 84], which BKC incorporates herein, the Restrictive Covenants are fully enforceable in bankruptcy cases and pursuant to applicable law. As such, the Debtors are prohibited from operating a hamburger business at the Restaurants until July 2027. *See* Motion to Convert, Memorandum of Law, ¶¶ 11-18.

23. Moreover, by continuing to operate the Restaurants, Debtors have caused customer confusion. The TikTok video described above shows a customer at the Paterson Restaurants who could not tell whether "Jumbo King Burger" is affiliated with BKC, and the Debtors' own website continues to present the locations to the public as burger restaurants at the former Burger King® Restaurant Locations. Other TikTok videos, one of which was shared over 3,500 times, demonstrates the brand confusion caused by the Debtors' blatant infringement on BKC's intellection property rights and in open violation of the Restrictive Covenants. The resulting consumer confusion, erosion of brand integrity, and dilution cannot be undone and require BKC be allowed to pursue injunctive relief.

24. As a further ground for "cause", there is no adequate protection for the ongoing violation of BKC's intellectual property rights. Unlike a secured creditor's interest in depreciating collateral, BKC's intellectual property rights are inherently incapable of adequate protection through any form of monetary payment while the violation continues. No cash payment can compensate for the loss of control over the quality of goods and services offered under BKC's marks, the resulting confusion among consumers, the erosion of brand equity built over more than seventy years, or the dilution of the Burger King® Marks. *See In re B-K of Kan., Inc.*, 69 B.R. 812, 814 (Bankr. D. Kan. 1987) (holding that there is no adequate protection for the violation of a

franchisor's trademark and intellectual property rights and granting stay relief); *see also* 15 U.S.C. § 1116 (authorizing injunctive relief for trademark infringement). The Debtors recognized as much in Section V.E of the Settlement Agreement, where they expressly acknowledged that monetary damages would be inadequate to remedy the harm caused by operating a Restaurant after termination without BKC's written authorization and that BKC would be entitled to injunctive relief. *See* Mencia Declaration, Ex. D.

**B. *Relief is Independently Warranted Under 11 U.S.C. § 362(d)(2)***

25. Stay relief is independently warranted under 11 U.S.C. § 362(d)(2), since the Debtors lack any rights whatsoever to the Burger King brand and their willful violation of federal trademark law and the Restrictive Covenants cannot be necessary to an effective reorganization.

**The Fourteen-Day Stay Under Rule 4001(a)(4) Should Be Waived**

26. Finally, the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4) should be waived so that any order is effective immediately upon entry. Rule 4001(a)(4) permits the Court to waive the fourteen-day requirement, and waiver is appropriate where, as here, the infringement is ongoing and each additional day of unauthorized operation inflicts further irreparable harm on BKC's marks and goodwill. Confirmation of the Plan is scheduled for the same date as the hearing on the Motion, and BKC should not be required to wait an additional two weeks before seeking injunctive relief in the district court.

**CONCLUSION**

27. The Debtors no longer have any rights in the Franchise Agreements. The Franchise Agreements were terminated by agreement, the Limited License that replaced them expired, and the statutory extension under § 108(b) ran out in July 2026. What remains is a straightforward case of former franchisees operating under a franchisor's marks without authorization, conduct that courts in this District and elsewhere have consistently held warrants stay relief. BKC seeks no

monetary relief from the estate and no recovery from any creditor. It asks only for leave to ask the United States District Court for the Southern District of Florida or Florida state court, the forum the parties contractually selected, to order the Debtors to stop violating BKC's rights.

**WHEREFORE**, BKC respectfully requests that this Court enter an order: (i) granting the Motion; (ii) modifying the automatic stay to permit BKC to commence and prosecute an action against the Debtors seeking injunctive and declaratory relief to halt the Debtors' unauthorized use of the Burger King® Marks and to enforce the post-termination Restrictive Covenants and other post-termination obligations under the Franchise Agreements and the Settlement Agreement; (iii) providing that the relief granted shall remain in full force and effect notwithstanding any conversion of these cases to cases under chapter 7, any dismissal of these cases, or the appointment of a trustee; (iv) waiving the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4) so that the order is effective immediately upon entry; and (v) granting such other and further relief as this Court deems just and proper.

Dated: August 14, 2026. **VENABLE LLP**

By: */s/ Michael A. Guerra*
Michael A. Guerra
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
MAGuerra@Venable.com

- and -

Glenn D. Moses (*pro hac vice*)
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
GMoses@Venable.com

*Counsel to Burger King Company LLC*

# EXHIBIT "A"

**From:** Moses, Glenn D.
**To:** Richard Trenk
**Subject:** JFM - Cease and Desist Notification
**Date:** Friday, July 31, 2026 5:00:28 PM

---

Good afternoon Richard. It has come to BKC's attention that despite the termination of the franchise agreements referenced below, the Debtors continue to operate their premises as Burger King® restaurants, displaying Burger King® signage, trade dress, branding, menus, uniforms and other indicia of a Burger King® franchise. The Debtors continued unauthorized use of the Burger King® trademarks constitutes, among other things, (1) willful trademark infringement under the Lanham Act, and (2) a blatant violation of violation of the post-termination covenants of the franchise agreements, and (3) irreparable harm to the goodwill and reputation of the Burger King® brand as well as trademark dilution.

Accordingly, BKC demands that the Debtors immediately (1) cease and desist from identifying as a Burger King® restaurant and the use of the Burger King® marks and intellectual property in any form, (2) deidentify the premises by removing all Burger King® signage, and (3) comply fully with all post termination covenants of the franchise agreements.

BKC reserves all rights and remedies.

Sincerely,

Glenn D. Moses, Esq. | Venable LLP
t 305.372.2522 | m 305.613.1888
801 Brickell Avenue, Suite 1500, Miami, FL 33131

GMoses@Venable.com | www.Venable.com

---

**From:** Moses, Glenn D.
**Sent:** Monday, June 29, 2026 9:52 PM
**To:** Richard Trenk <rtrenk@trenkisabel.law>
**Subject:** JFM - Confirmation of Termination of Limited Licenses to Operate Burger King® Restaurants

Richard, this will confirm that pursuant to the Settlement Agreement dated July 31, 2023, Burger King's notice dated April 2, 2026, and Section 108(b) of the Bankruptcy Code:

- J.F.M. 6090, Inc.'s right to operate as a Burger King® franchisee expires on July 4, 2026;
- JFM Spring LLC's right to operate as a Burger King® franchisee expires on July 4, 2026; and
- JFM Sparta's right to operate as a Burger King® franchisee expires on July 10, 2026

Burger King expects the Debtors' full compliance with all post-termination covenants under the franchise agreements.

Sincerely,

Glenn D. Moses, Esq. | Venable LLP
t 305.372.2522 | m 305.613.1888
801 Brickell Avenue, Suite 1500, Miami, FL 33131

GMoses@Venable.com | www.Venable.com