**TRENK ISABEL SIDDIQI**
**& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Chapter 11 Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>J.F.M. 6090, LLC., d/b/a BURGER KING, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-15123 (JKS)<br>(Jointly Administered)<br><br>Hearing Date: August 25, 2026 |

**DEBTORS' BRIEF IN OPPOSITION TO BURGER KING COMPANY'S MOTION TO CONVERT CASES TO CHAPTER 7 PURSUANT TO 11 U.S.C. 1112(b)**

J.F.M. 6090, Inc. ("**6090**"), JFM Spring LLC ("**JFM Spring**") and JFM Sparta LLC ("**JFM Sparta**," and, collectively with 6090 and JFM Spring, the "**Debtors**"), the chapter 11 debtors and debtors-in-possession in the above-captioned jointly administered cases, by and through their counsel, Trenk Isabel Siddiqi & Shahdanian P.C., files this opposition (the "**Opposition**") to Burger King Company, LLC's ("**BKC**") *Motion to Convert Cases to Chapter 7 Pursuant to 11 U.S.C. 1112(b)* [ECF 84] ("**Motion**"), and respectfully states as follows:

[1] The Debtors in these Chapter 11 cases, along with their case numbers are as follows: J.F.M. 6090, Inc., Case No. 26-15123 (JKS); JFM Spring LLC, Case No. 26-15124 (JKS); and JFM Sparta, LLC, Case No. 26-15275(JKS).

## STATEMENT OF FACTS

**The Debtors' Bankruptcies**

1. On May 5, 2026, (the "**Petition Date**"), the Debtors each commenced their bankruptcy cases by filing a voluntary chapter 11 petition under the Bankruptcy Code. [ECF 1].

2. The Debtors continue to operate their business and manage its affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the filing of this Opposition, no trustee, examiner or creditors' committee has been appointed in this case.

3. The Debtor filed a *Second Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan Proposed by the Debtor-in-Possession* [ECF 72] (the "**Disclosure Statement**") and related Plan [ECF 73].

4. On July 21, 2026, the Court entered an *Amended Order Conditionally Approving Second Amended Disclosure Statement, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof* [ECF 74] (the "**Disclosure Statement Order**"). Pursuant to the Disclosure Statement Order, the Court conditionally approved the Disclosure Statement as containing "adequate information."

5. Confirmation of the Plan is scheduled for August 25, 2026.

**The Relationship with BKC**

6. The Debtors extensive history of operating Burger King franchises under a Franchise Agreement with BKC is detailed in the First Day Declaration of Ranjana Jethwa [ECF 2] and is incorporated herein by reference.

7. On July 31, 2023, the Debtors and Ms. Jethwa entered into a Settlement Agreement (the "**Agreement**") with BKC whereby, amongst other things, the "Parties acknowledge and agree that the Franchise Agreements are **terminated**" effective as of the date of the Settlement

Agreement. Certification of Ranjana Jethwa in Opposition to the Motion ("**Jethwa Cert.**") at Exh. A, § II(A) (emphasis added).

8. In addition, the Agreement provides that the Debtors were permitted "to continue to operate the Franchised Restaurants from the Termination Date for a period through and including May 31, 2025 . . . on the same terms and conditions (other than the term and right of successor or renewal) as originally set forth in the Franchise Agreement." *Id.* at § II(B).

9. The Agreement also provides that: "All terms of the Franchise Agreements (other than term and right of successor or renewal) not inconsistent with this Agreement are incorporated herein and shall be binding between BKC and Licensee." *Id.* at § II(D).

10. On June 3, 2025, the Debtors and Ms. Jethwa entered into an Amendment to Sale Agreement which, amongst other things, extended the Sale Date "through and including July 30, 2025." Jethwa Cert., Exh. B.

11. On September 3, 2025, the Debtors and Ms. Jethwa entered into a Second Amendment to Sale Agreement which, amongst other things, extended the Sale Date "through and including September 30, 2025." Jethwa Cert., Exh. C.

12. On April 2, 2026, the Debtors and Ms. Jethwa received a Notice of Default from BKC asserting that a default occurred in the Agreement as a result of the failure to sell the Debtors "by March 31, 2026." Jethwa Cert., Exh. D.

13. The Debtors and Ms. Jethwa never entered into any agreement or extension of the Agreement past September 30, 2025. Accordingly, the Agreement terminated as of September 30, 2025.

14. As a result, at most, the Restrictive Covenant contained in the Franchise Agreement expires on September 30, 2025.

15. On August 17, 2025, counsel to the Debtors sent BKC a letter requesting any additional extensions of the Agreement past September 30, 2025. Jethwa Cert., Exh. E.

16. On August 18, 2026, counsel for BKC responded with the email annexed hereto as **Exhibit A**, wherein BKC asserts that it has "two ultimatums" to a proposed sale of the Debtors but does not demonstrate that the Agreement was extended beyond September 30, 2026.

17. In addition, the Debtors and Ms. Jethwa dispute each of the assertions contained in BKC's Letter of Protest to the United States Patent and Trademark Office. There is no way that a person could reasonably confuse the Jumbo King Burger with a Burger King. Jethwa Cert., Exh. F.

18. On August 4, 2026, BKC filed the Motion. [ECF 84]. The entire premise of BKC's Motion is that the Debtors cannot and will not be able to propose a confirmable plan and have no prospect of rehabilitation based on the fact that the Franchise Agreements contain Restrictive Covenants barring the Debtors from operating burger restaurants for one year. Based upon the September 30, 2025 termination, that Restrictive Covenant will expire on September 30, 2026.

## LEGAL ARGUMENT

### A. BKC HAS NOT ESTABLISHED CAUSE FOR CONVERSION

19. Pursuant to 11 U.S.C. § 1112(b)(1):

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

20. Section 1112(b) lists sixteen illustrative examples of what constitutes "cause" for conversion or dismissal of a Chapter 11 proceeding. The statutory examples of cause are

illustrative and non-exclusive. *In re 3 Ram, Inc.*, 343 B.R. 113, 118 (Bankr. E.D. Pa. 2006); *In re Ramreddy, Inc.*, 440 B.R. 103, 2009 WL 3763988, *5 (Bankr. E.D. Pa. 2009); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

21. A motion filed under § 1112(b) necessitates a two-step analysis: (1) to determine if "cause" exists to either dismiss the Chapter 11 case or convert the Chapter 11 case to a Chapter 7 proceeding and (2) to determine which option, dismissal or conversion, is in the "best interest of creditors and the estate." *See In re Superior Siding & Window*, 14 F.3d 240, 242 (4th Cir. 1994) (citing *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991)).

22. Pursuant to Section 1112(b)(1) of the Bankruptcy Code, the initial burden lies with a movant to establish "cause" for conversion. *See* 11 U.S.C. § 1112(b)(1). If the movant establishes "cause", then the burden shifts to a debtor to prove it falls within the § 1112(b)(2) "unusual circumstances" exception to § 1112(b)(1)'s mandatory conversion. Congress explained the exception, stating it only applies if: "(1) the debtor or a party in interest objects and establishes that there is a reasonable likelihood that a plan will be confirmed within the time periods set forth in section 1121(e) and 1129(e), or if these provisions are inapplicable, within a reasonable period of time; (2) the grounds for granting such relief include an act or omission of the debtor for which there exists a reasonable justification for such act or omission; and (3) such act or omission will be cured within a reasonable period of time." *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007).

23. The entire premise of BKC's Motion is that the Debtors cannot and will not be able to propose a confirmable plan and have no prospect of rehabilitation based on the fact that the Franchise Agreements contain Restrictive Covenants barring the Debtors from operating burger restaurants. The Motion, however, puts the cart before the horse. It presupposes that the Debtors

cannot operate until July 4, 2027 (6090 and Spring) and July 10, 2027 (Sparta). The Debtors dispute that the Restrictive Covenants are enforceable past September 30, 2026.

24. In this regard, on July 31, 2023, the Debtors and Ms. Jethwa entered into the Agreement with BKC whereby, amongst other things, the "Parties acknowledge and agree that the Franchise Agreements are **terminated**" effective as of the date of the Settlement Agreement. Jethwa Cert., Exh. A, § II(A) (emphasis added). The Agreement incorporated certain terms of the Franchise Agreement, providing that the Debtors were permitted "to continue to operate the Franchised Restaurants from the Termination Date for a period through and including May 31, 2025 . . . on the same terms and conditions (other than the term and right of successor or renewal) as originally set forth in the Franchise Agreement." *Id.* at § II(B).

25. On June 3, 2025, the Debtors and Ms. Jethwa entered into an Amendment to Sale Agreement which, amongst other things, extended the Sale Date "through and including July 30, 2025." Jethwa Cert., Exh. B. The September 3, 2025 Second Amendment to Sale Agreement extended the Sale Date "through and including September 30, 2025." Jethwa Cert., Exh. C.

26. The Debtors and Ms. Jethwa never entered into any agreement or extension of the Agreement past September 30, 2025. Accordingly, the Agreement terminated as of September 30, 2025. As a result, ***at most***, the Restrictive Covenant contained in the Franchise Agreement expires on **September 30, 2026**.

27. Thus, the entire premise that the Debtors will be unable to fulfill their obligations under the already pending Plan, which is scheduled to be heard on the same date as this Motion, is completely unfounded. In addition, the Debtors operations as a Jumbo King Burger offer different and more extensive menus than Burger King, including grilled chicken items, barbecue

wings, and macaroni and cheese.[2] This may have significant implications on BKC's ability to enforce the Restrictive Covenants.

28. As a result of the foregoing, BKC's assertion that it has a likelihood of success on the merits with respect to obtaining an injunction prohibiting the Debtors from operating a Jumbo King Burger and successfully reorganize is doubtful. The various agreements entered into by the Debtors are clear and BKC has no signed extensions after September 30, 2025.

29. Similarly, BKC's arguments with respect to their Lanham Act put the cart before the horse and ask this Court to make a determination on whether there is a likelihood of confusion between "Burger King" and "Jumbo King Burger." Such an issue would require extensive discovery and witnesses to determine what a "likelihood of confusion" consists of when dealing with one of the most popular burger franchises in the country. Indeed, the mere use of the words "King" and "Burger" cannot suffice where there are fast food restaurants using the same terms.[3] Moreover, the signage alone demonstrates that people are unlikely to confuse the two restaurants. *See* Jethwa Cert., Exh. F.

30. Similarly, BKC has presented no evidence that the Debtors are using any of the trade secrets, operating systems, vendor relationships, or proprietary know how to support that they are being irreparably harmed by the operations of Jumbo King Burger. BKC bears the burden of demonstrating cause, but has given the Court no evidence of its claims besides self-serving allegations.

31. Finally, the Debtors, and not BKC, will be harmed if the Court determines on this thin record that the Debtors are either violating the Restrictive Covenants or violating the Lanham Act. This would result in the immediate shutdown of the Debtors, firing numerous employees,

---

[2] https://jumbokingburgers.com/menu
[3] *See, e.g.* https://www.calikingburger.com/

and ceasing operations immediately. As set forth above, BKC hasn't demonstrated any actual harm.

32. As a result, BKC has utterly failed to demonstrate that there is cause for conversion of this case where it bears the burden. Particularly in light of the fact that the Debtors are on the cusp of a confirmation hearing, which will demonstrate that it has a feasible confirmable Plan.

33. Accordingly, the Motion should be denied.

**B. IF THE COURT DOES FIND CAUSE, THE CASES SHOULD BE DISMISSED, NOT CONVERTED**

34. Section 1112(b)(1) of the Bankruptcy Code grants the Court discretion to determine whether a case should be converted or dismissed based on the "best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

35. Here, due to the lack of real assets that exist for the Debtors (limited, used restaurant equipment and leases), there would be no benefit to creditors or the estate to convert these matters to a Chapter 7 case. In light of the significant secured claims[4], covering essentially all of the Debtors' assets, there would be no viable return for unsecured creditors after payment of administrative claims of a Chapter 7. Accordingly, to the extent that the Court finds that cause does exist (which it does not), the Court should use its discretion to dismiss these Chapter 11 cases.

[4] First Franchise Capital Corp. is the major secured creditor of the Debtors, asserting a claim in excess of $3.3 million with existing judgments. The Debtors and FFCC have agreed to modified treatment under the Plan.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) deny the Motion in its entirety; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: August 18, 2026

**TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.**

*/s/ Richard D. Trenk*
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Chapter 11 Debtors and Debtors-in-Possession*